IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

JOSHUA MURRAY, individually and
on behalf of all others similarly situated,

　　　　　Plaintiff,

　　　　v.

NATIONAL ASSOCIATION OF
REALTORS,

　　　　　Defendant.

Case No. 2:22-cv-11107-SFC-DRG

HON. SEAN F. COX
Magistrate Judge David R. Grand

**DEFENDANT NATIONAL
ASSOCIATION OF REALTORS'
MOTION TO DISMISS**

Defendant National Association of Realtors® ("NAR") respectfully moves this Court for an order dismissing Plaintiff's Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff lacks Article III standing because he cannot establish that he suffered an actual injury in fact due to NAR's alleged disclosure of his information to third parties.  In addition, Plaintiff's claim is time-barred, and in any event, the Complaint fails to state a claim upon which relief can be granted.

Pursuant to Local Rule 7.1(a), the undersigned counsel certifies that on September 19, 2022, they communicated in writing to Plaintiff's counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiff's counsel stated that they would oppose this Motion.

Dated:  September 19, 2022          By: */s/ Tiana Demas*
                                        Tiana Demas
                                        Philip M. Bowman
                                        COOLEY LLP
                                        55 Hudson Yards
                                        New York, NY 10001
                                        (212) 479-6000
                                        tdemas@cooley.com

                                        Suzanne L. Wahl (P71364)
                                        Elise H. Yu (P79344)
                                        ARENTFOX SCHIFF LLP
                                        350 S. Main Street
                                        Suite 210
                                        Ann Arbor, MI 48104
                                        (734) 222-1517
                                        suzanne.wahl@afslaw.com
                                        elise.yu@afslaw.com

                                        *Attorneys for Defendant*
                                        *National Association of Realtors®*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

JOSHUA MURRAY, individually and
on behalf of all others similarly situated,

      Plaintiff,

     v.

NATIONAL ASSOCIATION OF
REALTORS,

      Defendant.

No. 2:22-cv-11107-SFC-DRG

HON. SEAN F. COX
Magistrate Judge David R. Grand

**MEMORANDUM IN SUPPORT
OF DEFENDANT NATIONAL
ASSOCIATION OF REALTORS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................ vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND .................................................................................................... 3

    A.    Plaintiff's Allegations ............................................................................ 3

    B.    NAR and REALTOR® Magazine ........................................................ 4

    C.    Plaintiff's NAR Membership ................................................................ 5

    D.    The Statutory Scheme .......................................................................... 5

ARGUMENT ........................................................................................................ 6

    A.    The Complaint Must Be Dismissed for Lack of Subject Matter
        Jurisdiction Because Plaintiff Cannot Establish Article III
        Standing. ................................................................................................ 6

        1.    Legal Standard ............................................................................ 6

        2.    Plaintiff Lacks Article III Standing. ............................................ 8

    B.    The Complaint Must Be Dismissed for Failure to State a Claim. ...... 12

        1.    Legal Standard .......................................................................... 13

        2.    NAR is Not "Engaged in the Business of" Selling
            Written Materials. ...................................................................... 14

        3.    Plaintiff's Claim is Time Barred by Michigan's three-
            year Statute of Limitations for Personal Injury Claims. ........... 16

        4.    Plaintiff Fails to Allege Facts Sufficient to Show that
            NAR Disclosed Plaintiff's PRI Between May 20 and July
            30, 2016. ................................................................................... 21

CONCLUSION .................................................................................................... 24

## Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ............................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................13, 15

*Ayers v. Gabis*,
  No. 20-cv-11735, 2021 WL 4785751 (E.D. Mich. Apr. 2, 2021)......................14

*Bailey v. City of Ann Arbor*,
  860 F.3d 382 (6th Cir. 2017) ............................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................14, 15

*Bickerstaff v. Lucarelli*,
  830 F.3d 388 (6th Cir. 2016) ............................................................15

*Boelter v. Advance Mag. Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016) ................................................11

*Boelter v. Hearst Communications, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...............................................19

*Cartwright v. Garner*,
  751 F.3d 752 (6th Cir. 2014) .............................................................7

*Coulter-Owens v. Time Inc.*,
  695 F. App'x 117 (6th Cir. 2017).........................................9, 16, 18

*D'Ambrosio v. Marino*,
  747 F.3d 378 (6th Cir. 2014) ............................................................14

*Dabish v. McMahon*,
  818 F. App'x 423 (6th Cir. 2020)......................................................20

*Dearborn Fed. Sav. Bank v. F.D.I.C.*,
  No. 13-cv-10833, 2014 WL 320950 (E.D. Mich. Jan. 29, 2014)......................12

*Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC*,
  No. 2:16-cv-2715, 2017 WL 6029596 (D. Nev. Dec. 5, 2017).........................19

*Edwards v. Hearst Communications, Inc.*,
No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ...................19, 20

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ...................................................................18

*Garden City Osteopathic Hosp. v. HBE Corp.*,
55 F.3d 1126 (6th Cir. 1995) ...................................................................17

*Gavitt v. Born*,
835 F.3d 623 (6th Cir. 2016) ...............................................................14, 15

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
491 F.3d 320 (6th Cir. 2007) .....................................................................7

*Halaburda v. Bauer Publ'g Co., LP*,
Nos. 12-cv-12831, 12-cv-14221, 12-cv-14390, 2013 WL 12246914
(E.D. Mich. Dec. 23, 2013)......................................................................18

*Hearn v. Rickenbacker*,
400 N.W.2d 90 (Mich. 1987)....................................................................17

*Jones v. Lacey*,
108 F. Supp. 3d 573 (E.D. Mich. 2015) ......................................................12

*Krassik v. Archaeological Inst. of Am.*,
No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) ....................20

*Lin v. Crain Commc'ns Inc.*,
No. 19-cv-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020)............9, 10, 18

*Lyshe v. Levy*,
854 F.3d 855 (6th Cir. 2017) .....................................................................7

*Marks v. Hulstron*,
No. 29453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010)......................20

*Mathews v. ALC Partner Inc.*,
No. 4:08-cv-10636, 2009 WL 2390526 (E.D. Mich. July 31, 2009) ..................8

*McCree v. Cont'l Mgmt., LLC*,
No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021)......................20

*Miller-Davis Co. v. Ahrens Constr., Inc.*,
  802 N.W.2d 33 (Mich. 2011)................................................................17

*Moeller v. Am. Media, Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017) ...........................................17

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ...........................................................18

*Murray v. U.S. Dep't of Treasury*,
  681 F.3d 744 (6th Cir. 2012) .............................................................6

*Palmer Park Square, LLC v. Scottsdale Ins. Co.*,
  878 F.3d 530 (6th Cir. 2017) ......................................................17, 20

*Perlin v. Time Inc.*,
  237 F. Supp. 3d 623 (E.D. Mich. 2017) ...........................................17

*Perry v. Cable News Network*, *Inc.*,
  854 F.3d 1336 (11th Cir. 2017) .........................................................18

*Pratt v. KSE Sportsman Media, Inc.*,
  No. 1:21-cv-11404, -- F. Supp. 3d --, 2022 WL 469075 (E.D.
  Mich. Feb. 15, 2022)..................................................................8, 20

*Prime Media, Inc. v. City of Brentwood*,
  485 F.3d 343 (6th Cir. 2007) .............................................................6

*Raden v. Martha Stewart Living Omnimedia, Inc.*,
  No. 16-cv-12808, 2017 WL 3085371 (E.D. Mich. Jul. 20, 2017) .......................9

*Renne v. Geary*,
  501 U.S. 312 (1991).............................................................................7

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
  601 F.3d 505 (6th Cir. 2010) ...........................................................14

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
  78 F.3d 1125 (6th Cir. 1996) ...........................................................8

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ..........................................................13

*Soehnlen v. Fleet Owners Ins. Fund*,
    844 F.3d 576 (6th Cir. 2016) ...............................................................7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..........................................................................6

*Taylor v. KeyCorp*,
    680 F.3d 609 (6th Cir. 2012) ...............................................................8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .......................................................................9

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................16

*Wheaton v. Apple, Inc.*,
    No. 19-cv-02833, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).......................23

## Statutes

M.C.L.
    § 600.5805.......................................................................17, 19, 20
    § 600.5813.............................................................................20, 21
    § 600.5815..................................................................................20
    § 750.147b.................................................................................20

Mich. Pub. Acts 1988, No. 378..................................................................5

Preservation of Personal Privacy Act, M.C.L. § 445.1711 *et seq.* ..................*passim*

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* .....................................5, 16

## Other Authorities

Fed. R. Civ. P.
    12(b)(1) ...............................................................................7, 8
    12(b)(6) ........................................................................1, 13, 14

U.S. Constitution Article III...............................................................*passim*

## STATEMENT OF ISSUES PRESENTED

1. Should the Court dismiss the Complaint for lack of Article III standing because Plaintiff cannot show an invasion of the narrow privacy interest protected by Michigan's Preservation of Personal Privacy Act ("PPPA")?

**Defendant's Answer: Yes.**

2. Should the Court dismiss the Complaint for failure to state a claim upon which relief can be granted because the PPPA only applies to persons "engaged in the business of" selling books or written materials at retail, and Plaintiff has failed to sufficiently allege that NAR—a trade association that provides a free magazine to its members—is engaged in such business?

**Defendant's Answer: Yes.**

3. Should the Court dismiss the Complaint as time-barred because Plaintiff's claim is governed by the three-year statute of limitations set forth in Michigan Compiled Laws § 600.5805(2)?

**Defendant's Answer: Yes.**

4. Whether, even assuming the six-year statute of limitations set forth in M.C.L. § 600.5813 applies, the Court should dismiss the Complaint for failure to sufficiently allege a PPPA violation during the narrow time frame between May 20 and July 30, 2016.

**Defendant's Answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

The controlling or most appropriate authority supporting this Motion includes:

1. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117 (6th Cir. 2017).

2. *Dabish v. McMahon*, 818 F. App'x 423 (6th Cir. 2020).

3. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126 (6th Cir. 1995).

4. Federal Rule of Civil Procedure 12(b)(1).

5. Federal Rule of Civil Procedure 12(b)(6).

6. Michigan Compiled Laws § 600.5805(2).

7. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996)

8. *Wheaton v. Apple, Inc.*, No. C-19-02883 WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

Defendant National Association of Realtors® ("NAR") respectfully submits this memorandum and the accompanying declaration of Tim Kline in support of its Motion, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's Complaint for lack of Article III standing and failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This case is one of dozens Plaintiff's counsel has filed throughout the country seeking to obtain windfall damages under Michigan's Preservation of Personal Privacy Act (the "PPPA").[1]  The PPPA has no application here, and Plaintiff's complaint should be dismissed without leave to amend.  The Michigan Legislature enacted the PPPA to protect a very specific privacy interest in the reading materials a person chooses to buy, rent, or borrow.  Consistent with this narrow purpose, the statute prohibits persons who are "engaged in the business of" selling written materials from disclosing customers' personal reading choices—specifically by

---

[1] Since 2021, Plaintiff's counsel, Hedin Hall LLP and Bursor & Fisher PA, have jointly filed at least 38 PPPA cases and many more separately. *See, e.g.*, *White v. Newsmax Media, Inc.*, No. 5:22-cv-11765-JEL-JJCG, ECF No. 1, (E.D. Mich. July 30, 2022); *Moore v. Columbia Books Inc.*, No. 1:22-cv-00583-HYJ-RSK, ECF No. 1, (W.D. Mich. Jun. 23, 2022); *Pett v. Publishers Clearing House, Inc.*, No. 2:22-cv-11389-DPH-EAS, ECF No. 1, (E.D. Mich. Jun. 22, 2022); *Taylor v. Belvoir Media Grp.*, No. 1:22-cv-00477-HYJ-RSK, ECF No. 1, (W.D. Mich. May 30, 2022); *Taylor v. Active Interest Media*, No. 1:22-cv-00447-HYJ-RSK, ECF No. 1, (W.D. Mich. May 17, 2022); *Nashel v. New York Times Co.*, 2:22-cv-10633-SJM-DRG, ECF No. 1, (E.D. Mich. Mar. 24, 2022); *Ouellette v. Entrepreneur Media, Inc.*, No. 1:21-cv-11799-TLL-PTM, ECF No. 1, (E.D. Mich. Aug. 4, 2021).

identifying a person "as having purchased, leased, rented, or borrowed" reading material.  Having apparently exhausted the universe of entities that actually sell magazines, Plaintiff's counsel has sued NAR, a trade association of real estate professionals that provides a *free* unsolicited magazine to all its members.  NAR's alleged disclosure of a "subscriber" list does not fall within the plain meaning of the PPPA's prohibitions, and its application here would not serve the statute's purpose: to prevent disclosure of Michigan residents' personal reading choices.

The Court should dismiss the Complaint for several reasons.  ***First***, the Court lacks subject matter jurisdiction because as a factual matter, Plaintiff has not suffered an injury in fact and lacks Article III standing.  The sworn affidavit submitted with this Motion establishes that NAR did not identify Plaintiff to anyone "as having purchased, leased, rented, or borrowed" books or other reading materials, as required to establish a privacy injury under the PPPA.  At most (and this has not been established as to the narrow time frame), NAR discloses the fact its members receive, free of charge, a trade magazine they did not ask to receive.  There was thus no disclosure of Plaintiff's reading choices.  Plaintiff's allegations to the contrary are not entitled to the presumption of truth on a factual challenge to standing, and the Court should dismiss the Complaint for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1).

**Second**, the Complaint fails to state a claim because the PPPA applies only to persons or entities who are "engaged in the business of selling at retail, renting, or lending books or other written materials[.]" M.C.L. § 445.1712(1). Plaintiff has not sufficiently alleged that NAR—a trade association that sends all members a complimentary magazine—is engaged in that business, or that it sold, rented, or lent Plaintiff any written material.

**Third**, Plaintiff's claims are time-barred under the applicable three-year statute of limitations, and even assuming *arguendo* that Michigan's catch-all six-year statutory limitations period applies, Plaintiff has not pleaded any facts showing that NAR disclosed any information during the narrow time frame between May 20, 2016 (six years before the Complaint was filed) and July 30, 2016 (the day before the PPPA's amendments became effective).

For these reasons, the Court should dismiss the Complaint without leave to amend.

## BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff is a resident of South Lyon, Michigan, who allegedly "subscribe[d] to" *REALTOR*® Magazine. Compl., ECF No. 1, PageID.5 ¶ 9. He asserts a single PPPA claim, premised on NAR's purported disclosure of "mailing lists" to data aggregators and other third parties. *Id.* Plaintiff claims these mailing lists contain

his Private Reading Information ("PRI"), which he defines as "'customers' information—including their full names, titles of publications subscribed to, and home addresses[.]" *Id.* ¶ 5.

Plaintiff incorporates into the Complaint a screenshot purportedly from NextMark, Inc., a third-party "list broker." *Id.* ¶ 2 & Ex. A. While Plaintiff asserts that NextMark sells a list "contain[ing] the Private Reading Information of 1,413,832 of NAR's active U.S. subscribers," *id.* ¶ 2, the screenshot does not contain Plaintiff's name or address, or anyone else's.

Plaintiff seeks to represent a class consisting of "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period, had their Private Reading Information disclosed to third parties by NAR without consent." *Id.* ¶ 49. He requests statutory damages of "$5,000.00 per Class member[.]" *Id.* ¶ 73. Plaintiff does not claim he suffered any actual damages as a result of a PPPA violation.

## B.   NAR and *REALTOR*® Magazine

NAR is the country's largest trade association, representing over 1.5 million members who are engaged in various facets of the real estate industry. Declaration of Tim Kline, attached hereto as Exhibit 1 ("Kline Decl.), ¶ 3. NAR's primary goal is to support the right to own, buy, and sell real property. *Id.* NAR provides many benefits to its members, including advocating on their behalf to federal government policymakers, offering designation and certification courses, and providing

discounted prices on products and services offered by NAR's business partners. *Id.*
¶ 4.  NAR members are permitted to publicize their membership by using the term
REALTOR® next to their names.  *Id.* ¶ 10.  This mark has one meaning: NAR
membership, and it signifies a real estate professional's pledge to adhere to NAR's
strict code of ethics.  *Id.*  NAR sends all members *REALTOR*® Magazine free of
charge. *Id.* ¶ 5. NAR does not sell subscriptions of the magazine to members.  *Id.*
NAR members who opt out of receiving *REALTOR*® Magazine by mail are not
refunded any portion of their membership dues.  *Id.* ¶ 6.

### C.   Plaintiff's NAR Membership

Plaintiff is currently an active NAR member, and he was so throughout 2016.
*Id.* ¶ 8.  Plaintiff's NAR membership (along with his photo and other information)
is advertised on realtor.com, a publicly-available website.  *Id.* ¶¶ 8–16.

### D.   The Statutory Scheme

Enacted in 1989 soon after the passage of the federal Video Protection Privacy
Act ("VPPA"), the PPPA's stated purpose is to "preserve personal privacy with
respect to the purchase, rental, or borrowing of certain materials," Mich. Pub. Acts
1988, No. 378, *eff.* Nov. 7, 1989, as relevant here, "books or other written materials,"
M.C.L. § 445.1712(1).  A person violates the PPPA if: (1) they are "engaged in the
business of selling at retail, renting, or lending books or other written materials," and
(2) they "disclose to any person, other than the customer, a record or other

information concerning the purchase, lease, rental, or borrowing of those materials that indicates the identity of the customer." *Id.* "Customer means a person who purchases, rents, or borrows a book or other written material." *Id.* § 445.1711(a). The original version of the PPPA contained a statutory damages provision of $5,000 for a violation of the Act. Mich. Pub. Acts 1988, No. 378, § 5.

In 2016, the Michigan legislature amended the PPPA and removed the statutory damages provision. M.C.L. § 445.1715. To sue under the amended statute, which went into effect on July 31, 2016, a plaintiff must "suffer [] actual damages as a result of a violation of this act." *Id.* § 445.1715(2).

## ARGUMENT

### A.  The Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Cannot Establish Article III Standing.

#### 1.  Legal Standard

Article III of the U.S. Constitution limits federal court jurisdiction to "actual cases or controversies, neither of which exists unless a plaintiff establishes his standing to sue." *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). A plaintiff therefore cannot "litigate a case in federal court without establishing *constitutional* standing." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (emphasis in original). This is true "even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotations and citations omitted). A plaintiff can establish he has standing only if: (1) he suffers an injury in fact which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016). These requirements ensure that plaintiffs have a "personal stake in the outcome of the controversy as to warrant their invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Id.* (quotations omitted).

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle to seek dismissal for lack of standing. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) ("Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). A defendant may pursue either a factual or facial challenge to standing. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack contests the sufficiency of the pleadings, and a factual attack contests the actual truth of the jurisdictional allegations. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A defendant making a factual attack may use sworn testimony to expose the

plaintiff's failure to comport with subject-matter jurisdiction prerequisites. *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).[2]  There are no "safeguards to the plaintiff" when a defendant raises a factual attack.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citation omitted). There is (1) no presumptive truthfulness attached to the plaintiff's allegations; (2) the burden to establish subject matter jurisdiction shifts to the plaintiff; and (3) the Court may weigh the evidence before it and resolve factual disputes.  *Id.*

### 2.  Plaintiff Lacks Article III Standing.

Plaintiff lacks standing because the only asserted (and possible) injury in fact under the PPPA is an invasion of privacy in one's reading choices, and he has not suffered any such injury.  Courts in the Sixth Circuit have consistently held that Article III standing for an alleged PPPA violation must be based on the "nonconsensual dissemination of information that reflects a plaintiff's personal reading *choices*, which acutely invades a protected right to privacy in such matters and, thus, inflicts harm in a concrete and particularized way, albeit intangibly." *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, -- F. Supp. 3d --, 2022 WL

---

[2] A defendant may make a factual challenge before answering the complaint. *Mathews v. ALC Partner Inc.*, No. 4:08-cv-10636, 2009 WL 2390526, at \*4 (E.D. Mich. July 31, 2009) ("a rule permitting factual attacks on the jurisdictional basis of a complaint to occur only after an answer is filed is utterly incompatible with the Sixth Circuit's clear and repeated holding that such a factual attack is properly brought by motion under Federal Rule of Civil Procedure 12(b)(1)").

469075, at *8–9 (E.D. Mich. Feb. 15, 2022) ("Defendants' violation of the PPPA, assumed true, violated Plaintiffs' statutorily conferred right to privacy in their *reading habits*—an intangible harm presenting ample constitutional mooring for Article III purposes.") (emphases added). *See also Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017); *Lin v. Crain Commc'ns Inc.*, No. 19-cv-11889, 2020 WL 248445, at *6 (E.D. Mich. Jan. 16, 2020) ("The PPPA gives [plaintiff] a legally protected interest in the privacy of his *reading choices*.") (emphasis added); *Raden v. Martha Stewart Living Omnimedia, Inc.,* No. 16-cv-12808, 2017 WL 3085371, at *3 (E.D. Mich. Jul. 20, 2017) (same).  These cases are consistent with the Supreme Court's recent instruction that a plaintiff "does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2220 (2021) (quotations and alterations omitted). Accordingly, Plaintiff has standing only if he can show an invasion of privacy in the reading material he affirmatively chose to receive—*i.e.*, material he purchased, rented, or borrowed.

The Kline declaration establishes that Plaintiff has not suffered the requisite injury in fact.  Plaintiff is an NAR member, and he was a member throughout 2016. Kline Decl. ¶ 8.  Plaintiff therefore received a free mailed copy of *REALTOR®* Magazine during the relevant pre-July 30, 2016 time period. *Id.* ¶ 5.  Since all NAR

members receive the free magazine—and Plaintiff was a member—any alleged disclosure to a third-party about Plaintiff's receipt of the magazine reveals nothing about his personal reading choices, let alone his purchase, lease, rental, or borrowing of written materials. *See Lin*, 2020 WL 248445, at \*6 (failure to establish the PPPA's "as having purchased" element is fatal to a PPPA claim because the PPPA solely protects an individual's right of privacy in the reading material he chooses to purchase, lease, rent, or borrow).

Thus, there can be no invasion of privacy in Plaintiff's reading choices, the only possible basis for an Article III injury in fact.

The Kline declaration also controverts Plaintiff's allegation that he "purchased his subscription to *REALTOR®* magazine directly from NAR." Compl. ¶ 9. NAR sends copies of *REALTOR®* Magazine to all its members at no additional charge. Kline Decl. ¶¶ 5–6. While members can opt out of receiving the magazine, Plaintiff did not do this. *Id.* ¶ 9. In any event, members who opt out are not refunded any portion of their membership dues. *Id.* ¶ 6. Since 2012, digital versions of *REALTOR®* Magazine have been available for free to NAR members and the public alike through NAR's website: https://www.realtormagdigital. com/realtor/Store.action?lm=1658930674000. *Id.* ¶ 7.

And even assuming, as alleged, that NAR disclosed information indicating Plaintiff had *received REALTOR®* Magazine, there still would be no injury in fact

because such a disclosure would not identify Plaintiff as having purchased, leased, rented, or borrowed the magazine.  This distinction is critical.  The PPPA's prohibitions are limited to disclosure of information concerning a specific person's purchase, lease, rental, or borrowing of reading material.  The Michigan legislature could have extended the PPPA's protections to reading materials a person *receives*, but it limited the statute to written materials "purchased, leased, rented, or borrowed."  M.C.L. § 445.1712(1).  There is good reason for this limitation: There is no conceivable privacy interest to protect for the passive receipt of unrequested books or magazines.  *See* Compl. ¶ 18 (explaining that the related Video Privacy Protection Act "protects the selection of books that we ***choose*** to read") (emphasis added); *see also Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 586 (S.D.N.Y. 2016) (quoting the legislative history of the PPPA, which states that Michigan wanted to enact a statute that would protect "one's ***choice*** in videos, records, and books") (emphasis added).

Plaintiff's claimed privacy injury is further undermined because he publicly touts his NAR membership—and by extension his receipt of *REALTOR*® Magazine.  All NAR members, including Plaintiff, are permitted to publicize their NAR membership by using the term REALTOR® next to their names.  Kline Decl. ¶ 11.  The REALTOR® mark has one meaning: member of NAR and the member's agreement to adhere to NAR's strict Code of Ethics.  *Id.*  NAR members can be

identified by searching realtor.com, a publicly-available website, and only active NAR members are displayed on realtor.com's "Find a REALTOR®" directory. *Id.* ¶¶12–13. Plaintiff's realtor.com profile prominently displays the REALTOR® mark and his NAR membership. *Id.* ¶¶ 15, 18, & Ex. A. Plaintiff cannot claim a privacy interest in information he publicly disseminates. *See Jones v. Lacey*, 108 F. Supp. 3d 573, 584 (E.D. Mich. 2015) ("a would-be plaintiff cannot assert a constitutional information-privacy claim as to information that was already in the public realm at the time of the alleged privacy breach").

For these reasons, the Court should dismiss the Complaint for lack of standing without leave to amend. *Dearborn Fed. Sav. Bank v. F.D.I.C.*, No. 13-cv-10833, 2014 WL 320950, at *5 (E.D. Mich. Jan. 29, 2014) (Cox, J.) ("This Court finds that Plaintiff's proposed amendments would be futile because this Court lacks subject matter jurisdiction to hear Plaintiff's claims against the FDIC as Receiver for Warren Bank.").

### B. The Complaint Must Be Dismissed for Failure to State a Claim.

Even assuming Plaintiff has standing (he does not), the Complaint is defective on many levels and should be dismissed for failure to state a claim. First, Plaintiff has failed to plead facts sufficient to show that the NAR is "engaged in the business of" selling reading materials, a critical element of a PPPA claim. Second, Plaintiff's claim is time-barred by the applicable three-year statute of limitations for personal

injury claims.  Third, even assuming *arguendo* that a six-year statute of limitations applies to a PPPA claim for statutory damages (it does not), the Complaint does not sufficiently allege that NAR violated the PPPA within the narrow two-month window between May 20 and July 30, 2016.

### 1. Legal Standard

A complaint should be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To withstand dismissal under Rule 12(b)(6), a plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference" that the defendant is liable for the alleged misconduct.  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When determining plausibility, the Court may rely on "a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *Id.*  On a motion to dismiss, the Court may consider documents outside of the Complaint that are "publicly availabl[e], and judicially noticeable" if central to Plaintiff's claim.  *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022).  If the pleadings contradict "verifiable facts central to his claims," then a plaintiff's allegations are implausible.  *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017).  Although the Court must otherwise accept all the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor, the allegations must contain

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  *Gavitt v. Born*, 835 F.3d 623, 640–41 (6th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Threadbare allegations are insufficient, and the Court "need not accept as true legal conclusions or unwarranted factual inferences[.]" *ᵘD'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted).

A court may not permit a plaintiff to amend his complaint where amendment is futile, such that an amended complaint "could not withstand a Rule 12(b)(6) motion to dismiss."  *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted).

### 2.    NAR is Not "Engaged in the Business of" Selling Written Materials.

The Court should dismiss the Complaint for failure to plead facts demonstrating that NAR is "engaged in the business of selling at retail, renting, or lending books or other written materials."  M.C.L § 445.1712(1).  As a threshold matter, Plaintiff does not allege any facts indicating that NAR rents or lends *REALTOR*® Magazine, much less that it is "engaged in the business" of this.  The Complaint's sole factual allegation concerns the sale prong: "Plaintiff purchased his subscription to *Realtor* magazine directly from NAR."  Compl. ¶ 9.  This allegation falls far short of pleading that NAR is "engaged in the business of selling" *REALTOR*® Magazine "at retail."

A complaint must contain more than legal conclusions and bare recitations of a claim's elements.  *Gavitt*, 835 F.3d at 640–41; *see also Ayers v. Gabis*, No. 20-11735, 2021 WL 4785751, at *3 (E.D. Mich. Apr. 2, 2021), *report and recommendation adopted by*, 2021 WL 4316853 (E.D. Mich. Sept. 23, 2021) (recommending dismissal because "Plaintiff offered no factual support upon which a conspiracy could be based" and "[t]he conspiracy allegations are nothing more than conclusory, vague assertions which assert a conspiracy existed among the defendants.").  Courts will not consider conclusory allegations unsupported by any alleged facts. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (dismissing a claim that was supported only by conclusory allegations with "no facts to support those contentions.").  Here, the Complaint contains a single, conclusory allegation that NAR is "engaged in the business of" selling written materials as a "magazine publisher that sells subscriptions to consumers[.]" Compl. ¶ 57. Notwithstanding the fact that NAR is a trade association that provides its members magazines free of charge, Plaintiff's lone "engaged in the business of" allegation finds no factual support in the Complaint.  Plaintiff has alleged nothing about NAR's business and how it allegedly involves the selling of written materials at retail, as required by the PPPA.  This threadbare allegation therefore does not satisfy the pleading standing set forth in *Twombly* and *Iqbal*, and the Complaint should be dismissed for that reason.

Moreover, federal courts examining similar statutes, such as the VPPA, have held that the "engaged in the business of" provision requires the defendant's responsibilities to be "tailored to" the statutorily proscribed conduct. *See, e.g., In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017) (stating that a manufacturer of Smart TVs would not fall within the VPPA's definition of a "video tape service provider" because it was only "peripherally or passively involved" in the business of delivering audio visual materials). The Sixth Circuit has also interpreted the PPPA to apply only where the defendant and the plaintiff have a "retailer-customer relationship." *Coulter-Owens*, 695 F. App'x at 123–24 (defendant's use of a subscription agent who in-turn sold magazine subscriptions to the plaintiff did not fall within the PPPA's meaning of "selling at retail" because the defendant's use of a subscription agent rendered it a nonretail seller).

Because Plaintiff has failed to sufficiently allege that NAR is "engaged in the business of" selling books or other magazines "at retail," the Complaint should be dismissed.

### 3. Plaintiff's Claim is Time-Barred by Michigan's Three-Year Statute of Limitations for Personal Injury Claims.

The Court should dismiss Plaintiff's claim because it is barred by the three-year statute of limitations for personal injury claims, which expired on July 30, 2019.

Michigan's three-year statute of limitations for general tort claims, M.C.L.

-16-

§ 600.5805(2), applies because the PPPA codifies a common law tort for the invasion of privacy, a species of personal injury under Michigan law.[3]  Where, as here, a statute contains no express limitations period, courts look to the "nature and origin" of a claim to determine its limitations period.  *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1132–33 (6th Cir. 1995).  *See also Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 534 (6th Cir. 2017) (holding that in determining the correct limitations period, courts "should focus on the 'nature of the right sued upon' rather than 'the form of [the] action or the relief demanded'") (quoting *Hearn v. Rickenbacker*, 400 N.W.2d 90, 92 (Mich. 1987)).

Courts in this District consistently recognize that the PPPA derives from the common law tort of invasion of privacy.  *See, e.g.*, *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("Subscribers' right to privacy in their personal-reading information is grounded in an interest 'traditionally regarded as providing a basis for a lawsuit in English or American courts.'") (citation omitted); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) ("[T]he right guaranteed by the [PPPA] is similar in kind to other privacy rights that were gradually recognized by American courts over the course of the last century . . .").

---

[3] Titled "Injuries to persons or property," Michigan courts refer to § 600.5805 as the "general tort statute of limitations because it is 'a compilation of the limitations on the general tort remedies.'" *Miller-Davis Co. v. Ahrens Constr., Inc.*, 802 N.W.2d 33, 38 (Mich. 2011).

The Complaint itself acknowledges that the PPPA is modeled on the federal VPPA, passed just one year earlier, in response to a Washington paper's publication of a list of movies then-Supreme Court nominee Judge Bork had rented from a local video store.  Compl. ¶¶ 14–20; *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).  Numerous courts have recognized that the VPPA, like the PPPA, codifies a common law right to privacy in a specific context.  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (VPPA "codifies a context-specific extension of the *substantive* right to privacy") (emphasis in original); *Perry v. Cable News Network*, *Inc.*, 854 F.3d 1336, 1340–41 (11th Cir. 2017) (VPPA "has a close relationship to a harm that has traditionally been regarded as providing a basis for lawsuit in English or American courts" (citation omitted)).

Thus, a PPPA claim is in the nature of a common law tort claim for invasion of privacy.  *See Coulter-Owens*, 695 F. App'x at 119 (noting that plaintiff claimed "an invasion of privacy in violation of [the PPPA]"); *Lin v. Crain Commc'ns Inc.*, No. 19-cv-11889, 2020 WL 248445, at *5 (E.D. Mich. Jan. 16, 2020) (noting that the PPPA addressed "invasion[s] of a legally protected privacy interest"); *Halaburda v. Bauer Publ'g Co., LP*, Nos. 12-cv-12831, 12-cv-14221, 12-cv-14390, 2013 WL 12246914, at *1 (E.D. Mich. Dec. 23, 2013) (PPPA is "a privacy right").  *See also* Compl. ¶¶ 15, 17, 20 (explaining that the PPPA "protects [Michigan's] citizens

privacy rights").  The statute's title—Preservation of Personal Privacy—amply reflects this.

Although the Michigan Supreme Court has not yet decided the statutory limitations period for the PPPA,[4] other federal courts have recognized that Section 600.5805(2)'s three-year limitations period applies to PPPA claims.  *See, e.g.*, *Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017); *Edwards v. Hearst Communications, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016).  Tellingly, Plaintiff's counsel has not disputed in other PPPA cases that Section 600.5805(2)'s three-year limitations period governs.  *See, e.g.*, *Markham v. National Geographic Partners, LLC*, No. 1:19-cv-00232, ECF No. 26 at 2–3, (W.D. Mich. Dec. 17, 2019) (arguing for tolling of a three-year statute of limitations period); *Rentola v. Dow Jones & Co., Inc.*, No. 4:20-cv-11589, ECF No. 12, at 2 (E.D. Mich. Sept. 8, 2020) ("Claims under the PPPA are subject to a 'three-year statute of limitations.'"); *James Edwards v. Hearst Commc'ns, Inc.*, No. 15-cv-

---

[4] At least one other litigant in this District has moved to certify to the Michigan Supreme Court the question of whether the three-year statute of limitations set forth in Section 600.5805(2) governs a PPPA claim.  *Nashel v. N.Y. Times Comp.*, No. 2:22-cv-10633, ECF No. 21 (E.D. Mich. July 26, 2022).  If the Court has any doubt about the application of the three-year statute of limitations, it should stay this case pending a decision on certification, to conserve judicial resources and the resources of the parties.  *See Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-2715, 2017 WL 6029596, at *3 (D. Nev. Dec. 5, 2017) (staying proceedings pending resolution of a certified question to Nevada's Supreme Court in another case within the same district).

09279, ECF No. 146 at 44, (S.D.N.Y. May 1, 2017) ("Hearst's argument that there

is no basis to toll the *three-year statute of limitations* is wrong") (emphasis added).

*Edwards* and *Boetler*, and even Plaintiff's counsel, rightfully recognize that PPPA

claims are subject to a three-year limitation period.[5]

---

[5] Two judges in this District and one judge in the Western District of Michigan recently applied the six-year statute of limitations under M.C.L. § 600.5813's to PPPA claims. *See Pratt*, 2022 WL 469075; *Hall v. Farm Journal, Inc.*, No. 2:21-cv-11811, ECF Nos. 24, 26 (E.D. Mich. April 5, 2022) ("Slip Op."); *Krassik v. Archaeological Inst. of Am.*, No. 2:21-cv-180, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022). The Court is not bound by these decisions, which incorrectly interpreted the Sixth Circuit's decision in *Palmer Park*, 878 F.3d at 534, to *always* require the application of the six-year statute of limitations to a statutory claim if the statute does not contain a limitations period. *Palmer Park* concerned the narrow issue of whether the limitations period for a claim brought by a business (not a person) for penalty interest on untimely-paid insurance benefits should be subject to the two-year statute of limitations for breach of contract or the six-year catch-all period. *Id.* The Sixth Circuit concluded because the claim for interest *only* could have been brought under the statute (and not under the relevant contract), the six-year period found in M.C.L. § 600.5813 applied. *Id.*

For decades, Michigan courts have applied the three-year limitations period in § 600.5805(2) to statutory claims that (like here) allege injury to *persons*, even where the statute itself does not contain a limitations period. *See, e.g.*, *McCree v. Cont'l Mgmt., LLC*, No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021); *Marks v. Hulstron*, No. 29453, 2010 WL 2134303, at *1 (Mich. Ct. App. May 27, 2010); *Dabish v. McMahon*, 818 F. App'x 423, 427–29 (6th Cir. 2020) (applying three-year statute of limitations period to claims brought under Michigan's Ethnic Intimidation statute, M.C.L. § 750.147b). Notably, the Sixth Circuit in *Dabish* (decided after *Palmer Park*) applied M.C.L. § 600.5805(2)'s three-year limitations period to a statutory claim where the statute did not contain a limitations period. The only way to read *Dabish* consistently with *Palmer Park* is that the *Palmer Park* panel considered the facts and statute before it and found that M.C.L. § 600.5815 provided the most analogous limitations period, *not* that the six-year statute of limitations *always* applies to a statutory claim without an express limitations period.

Because the three-year statute of limitations applies, the Complaint must be dismissed because the violations allegedly occurred before July 30, 2016, more than three years before the complaint was filed (on May 20, 2022).  Furthermore, the amended PPPA requires actual damages, and Plaintiff alleges none.

### 4. Plaintiff Fails to Allege Facts Sufficient to Show that NAR Disclosed Plaintiff's PRI Between May 20 and July 30, 2016.

As of July 31, 2016, the PPPA no longer permits claims for statutory damages; instead, a plaintiff must have "suffer[ed] [] actual damages as a violation of this act" to bring a claim.  Plaintiff alleges no actual damages, and his PPPA claim only covers the narrow time period between May 20 and June 30, 2016. Thus, even assuming for the sake of argument that a six-year statute of limitations applies, Plaintiff has not sufficiently alleged a PPPA violation during the relevant time.

Plaintiff will certainly argue—as his counsel previously has argued —that PPPA claims should be governed by the six-year catch-all period contained in M.C.L. § 600.5813 because the PPPA lacks an express limitations period. Section 600.5813 provides: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

But even if Section 600.5813's six-year limitations period applies, the Court should dismiss the Complaint because Plaintiff has failed to sufficiently plead compliance with that limitations period.  Plaintiff filed the Complaint on May 20,

2022, which means a claim for any alleged disclosure prior to May 20, 2016, is time-barred, and Plaintiff can state a claim for statutory damages only for an alleged disclosure that occurred between May 20 and July 30, 2016.  Apart from conclusory speculation, the Complaint fails to allege *when* NAR allegedly disclosed Plaintiff's PRI, let alone that this occurred between May 20 and July 30, 2016.  For instance, Plaintiff alleges he received "a barrage of unwanted junk mail" at an unspecified time.  Compl. ¶ 1. Viewing the Complaint in the light most favorable to Plaintiff, he has not alleged any facts sufficient to show when he received the allegedly unwanted mail, that he received it at the same address he provided to NAR, or that the junk mail is at all related to any alleged disclosure of Plaintiff's PRI.

The Complaint also relies on the NextMark screenshot, which Plaintiff alleges is an example of a list broker that "rents" a *REALTOR*® Magazine mailing list containing Plaintiff's PRI.  *Id.* ¶ 2 & Ex. A.  The screenshot does not contain Plaintiff's name or address (or anyone else's), and it says, "counts through 1/10/2022," which is more than five years after the May 20–July 30, 2016 time period.  This failure to plead any facts to indicate that the alleged statutory violation occurred during the narrow period for statutory relief is fatal to Plaintiff's claim and provides grounds for dismissal.

In another PPPA case brought by the same counsel against Apple, which involved nearly identical allegations and screenshots, the court dismissed the

complaint for failure to state a claim.  *See Wheaton v. Apple,* No. 19-cv-02833, 2019 WL 5536214, *4 (N.D. Cal. Oct. 25, 2019).  As here, the *Wheaton* plaintiffs claimed that Apple "rent[ed], transmit[ted], or otherwise disclose[d]" its customers' private information to "data aggregators, data miners, data brokers, data appenders, and other third parties," who then supplemented the information and disclosed it to "other third parties," causing "a barrage of unwanted junk mail." *Wheaton v. Apple*, No. 19-cv-02883, ECF 1, (N.D. Cal. May 24, 2019).  Judge Alsup of the Northern District of California dismissed the PPPA claim because the screenshot "does not explicitly disclose any names, addresses, or other personally identifying information of customers." *Wheaton*, 2019 WL 5536214, at *4.  The same reasoning applies here. *Id.* ("Without more information, *which was surely available to counsel*, this order will not speculate that the mail icon [on the screenshot] would lead to Apple customers' names and address.") (emphasis added).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed for lack of Article III standing, or alternatively, failure to state a claim without leave to amend.

Dated: September 19, 2022

By: */s/ Tiana Demas*

Tiana Demas
Philip M. Bowman
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
pbowman@cooley.com
tdemas@cooley.com

Suzanne L. Wahl (P71364)
Elise H. Yu (P79344)
ARENTFOX SCHIFF LLP
350 S. Main Street
Suite 210
Ann Arbor, MI 48104
(734) 222-1517
suzanne.wahl@afslaw.com
elise.yu@afslaw.com

*Attorneys for Defendant*
*National Association of Realtors®*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on September 19, 2022, the foregoing Defendant National Association of Realtors' Motion to Dismiss and Memorandum in Support was electronically filed with the Clerk of the Court by utilizing the CM/ECF System, which will provide electronic notification to all counsel of record.

*/s/ Tiana Demas*
Tiana Demas