IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

JOSHUA MURRAY, individually and
on behalf of all others similarly situated,

        Plaintiff,

       v.

NATIONAL ASSOCIATION OF
REALTORS,

        Defendant.

Case No. 2:22-cv-11107-SFC-DRG

HON. SEAN F. COX
Magistrate Judge David R. Grand

**DEFENDANT NATIONAL
ASSOCIATION OF REALTORS'
MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED
COMPLAINT**

Defendant National Association of Realtors® ("NAR") respectfully moves this Court for an order dismissing Plaintiff's First Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff lacks Article III standing because he cannot establish that he suffered an actual injury in fact due to NAR's alleged disclosure of his information to third parties. In addition, the First Amended Complaint fails to state a claim.

Pursuant to Local Rule 7.1(a), the undersigned counsel certifies that on September 19, 2022, they communicated in writing to Plaintiff's counsel, explaining the nature of the relief sought in this Motion, and seeking concurrence in that relief. Plaintiff's counsel stated that they would oppose this Motion.

Dated:  October 25, 2022

By: */s/ Tiana Demas*

Tiana Demas
Philip M. Bowman
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
tdemas@cooley.com

Khary J. Anderson
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800
kjanderson@cooley.com

Suzanne L. Wahl (P71364)
Elise H. Yu (P79344)
ARENTFOX SCHIFF LLP
350 S. Main Street
Suite 210
Ann Arbor, MI 48104
(734) 222-1517
suzanne.wahl@afslaw.com
elise.yu@afslaw.com

*Attorneys for Defendant*
*National Association of Realtors®*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOSHUA MURRAY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br><br>      v.<br><br>NATIONAL ASSOCIATION OF REALTORS,<br><br>      Defendant. | No. 2:22-cv-11107-SFC-DRG<br><br>HON. SEAN F. COX<br>Magistrate Judge David R. Grand<br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT NATIONAL ASSOCIATION OF REALTORS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................ vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ..................................................................................................... 4

    A.    Plaintiff's Allegations ............................................................... 4

    B.    NAR and REALTOR® Magazine ........................................... 6

    C.    Plaintiff's NAR Membership .................................................. 7

    D.    The Statutory Scheme .............................................................. 7

ARGUMENT ........................................................................................................... 8

    A.    The FAC Must Be Dismissed for Lack of Subject Matter
           Jurisdiction Because Plaintiff Cannot Establish Article III
           Standing. ................................................................................... 8

           1.    Legal Standard ............................................................... 8

           2.    Plaintiff Lacks Article III Standing. ........................... 10

    B.    The FAC Must Be Dismissed for Failure to State a Claim ................ 14

           1.    Legal Standard ............................................................. 14

           2.    NAR is Not "Engaged in the Business of" Selling
                Written Materials. ........................................................ 15

           3.    Plaintiff Fails to Allege Facts Sufficient to Show that
                NAR Disclosed Plaintiff's PRI Between May 20 and July
                30, 2016. ....................................................................... 18

    CONCLUSION .......................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) .................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................14, 17

*Ayers v. Gabis*,
   No. 20-cv-11735, 2021 WL 4785751 (E.D. Mich. Apr. 2, 2021).....................16

*Bailey v. City of Ann Arbor*,
   860 F.3d 382 (6th Cir. 2017) .................................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................15, 17

*Bickerstaff v. Lucarelli*,
   830 F.3d 388 (6th Cir. 2016) .................................................................16

*Bishop v. Lucent Techs., Inc.*,
   520 F.3d 516 (6th Cir. 2008) .................................................................20

*Boelter v. Advance Mag. Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) .................................................................13

*Boelter v. Hearst Communications, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) .................................................................18

*Bolton v. Dep't of the Navy Bd. for Correction of Naval Recs.*,
   914 F.3d 401 (6th Cir. 2019) .................................................................22

*Cartwright v. Garner*,
   751 F.3d 752 (6th Cir. 2014) .................................................................9

*Cates v. Crystal Clear Techs.*,
   *LLC,* 874 F.3d 530 (6th Cir. 2017) .................................................................17

*Coulter-Owens v. Time Inc.*,
   695 F. App'x 117 (6th Cir. 2017).................................................................10, 21

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*D'Ambrosio v. Marino*,
    747 F.3d 378 (6th Cir. 2014) ................................................................15

*Edwards v. Hearst Communications, Inc.*,
    No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) .........................18

*Gavitt v. Born*,
    835 F.3d 623 (6th Cir. 2016) ........................................................15, 16

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
    491 F.3d 320 (6th Cir. 2007) ..................................................................9

*Jones v. Lacey*,
    108 F. Supp. 3d 573 (E.D. Mich. 2015) ..................................................13

*Kaplan v. University of Louisville*,
    10 F. 4th 569 (6th Cir. 2021) ........................................................15, 17

*Lin v. Crain Commc'ns Inc.*,
    No. 19-cv-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020)...............10, 12

*Lyshe v. Levy*,
    854 F.3d 855 (6th Cir. 2017) ..................................................................9

*Mathews v. ALC Partner Inc.*,
    No. 4:08-cv-10636, 2009 WL 2390526 (E.D. Mich. Jul. 31, 2009) ..................9

*Murray v. U.S. Dep't of Treasury*,
    681 F.3d 744 (6th Cir. 2012) ..................................................................8

*Nashel v. New York Times Co.*,
    No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) .....12, 20, 21

*Pratt v. KSE Sportsman Media, Inc.*,
    586 F. Supp. 3d 666 (E.D. Mich. 2022) ..............................................10, 19

*Prime Media, Inc. v. City of Brentwood*,
    485 F.3d 343 (6th Cir. 2007) ..................................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Raden v. Martha Stewart Living Omnimedia, Inc.*,
  No. 16-cv-12808, 2017 WL 3085371  (E.D. Mich. Jul. 20, 2017) ...................10

*Renne v. Geary*,
  501 U.S. 312 (1991)..........................................................................................8

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
  78 F.3d 1125 (6th Cir. 1996) .......................................................................9, 10

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) ...........................................................................15

*Soehnlen v. Fleet Owners Ins. Fund*,
  844 F.3d 576 (6th Cir. 2016) ...........................................................................8, 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)........................................................................................8, 11

*Taylor v. KeyCorp*,
  680 F.3d 609 (6th Cir. 2012) ...............................................................................9

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).......................................................................................11

*Vermont Agency of Natural Resources v. United States ex. rel. Stevens*,
  529 U.S. 765 (2000)...........................................................................................11

*Wheaton v. Apple Inc.*,
  No. 19-cv-02883-WHA, 2019 WL 5536214 (N.D. Cal. Oct. 24, 2019)............20

**Statutes**

M.C.L.
§ 600.5805(2) .....................................................................................................18
§ 600.5813..........................................................................................................18

Mich. Pub. Acts 1988, No. 378...............................................................................7

Preservation of Personal Privacy Act, M.C.L. § 445.1711 *et seq.* ..................*passim*

# TABLE OF AUTHORITIES
## (continued)

<div align="right">

**Page(s)**

</div>

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ......................................... 7

**Other Authorities**

Fed. R. Civ. P.
   12(b)(1) .................................................................................1, 3, 9
   12(b)(6) .................................................................................1, 14

U.S. Constitution Article III..............................................................................*passim*

## STATEMENT OF ISSUES PRESENTED

1. Should the Court dismiss the First Amended Complaint ("FAC") for lack of Article III standing because Plaintiff cannot show an invasion of the narrow privacy interest protected by Michigan's Preservation of Personal Privacy Act ("PPPA")?

**Defendant's Answer: Yes.**

2. Should the Court dismiss the FAC for failure to state a claim because the PPPA only applies to persons "engaged in the business of" selling books or written materials at retail, and Plaintiff has failed to sufficiently allege that NAR—a trade association that provides a free magazine to its members—is engaged in such business?

**Defendant's Answer: Yes.**

3. Should the Court dismiss the FAC as time-barred because Plaintiff's claim is governed by the three-year statute of limitations set forth in Michigan Compiled Laws § 600.5805(2)?

**Defendant's Answer: Yes.**

4. Even assuming the six-year statute of limitations set forth in M.C.L. § 600.5813 applies, should the Court dismiss the FAC for failure to sufficiently allege a PPPA violation during the narrow time frame between May 20 and July 30, 2016 (or February 9 and July 30, 2016)?

**Defendant's Answer: Yes.**

5. Does the alleged disclosure of Plaintiff's information fall within the PPPA's direct marketing exception?

**Defendant's Answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

The controlling or most appropriate authority supporting this Motion includes:

1.     *Coulter-Owens v. Time Inc.*, 695 F. App'x 117 (6th Cir. 2017).

2.     Federal Rule of Civil Procedure 12(b)(1).

3.     Federal Rule of Civil Procedure 12(b)(6).

4.     *Nashel v. New York Times Co.*, No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022).

5.     *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996).

6.     *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

7.     *Vermont Agency of Natural Resources v. United States ex. rel. Stevens*, 529 U.S. 765 (2000).

8.     *Wheaton v. Apple, Inc.*, No. 19-cv-02883-WHA, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019).

Defendant National Association of Realtors® ("NAR") respectfully submits this memorandum and the accompanying declaration of Colleen Doyle in support of its Motion, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff's First Amended Complaint ("FAC") for lack of Article III standing and failure to state a claim.

## PRELIMINARY STATEMENT

This case is one of dozens Plaintiff's counsel has filed throughout the country seeking to obtain windfall damages under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711 *et seq.* (1989) (hereinafter "PPPA").[1][2]  The PPPA has no application here, and the FAC should be dismissed without leave to amend.  The Michigan Legislature enacted the PPPA to protect a limited privacy

---

[1] Since 2021, Plaintiff's counsel, Hedin Hall LLP and Bursor & Fisher PA, have jointly filed over 40 cases under the unamended version of the PPPA and many more separately.  *See, e.g.*, *White v. Newsmax Media, Inc.*, No. 5:22-cv-11765-JEL-JJCG, ECF No. 1, (E.D. Mich. July 30, 2022); *Moore v. Columbia Books Inc.*, No. 1:22-cv-00583-HYJ-RSK, ECF No. 1, (W.D. Mich. Jun. 23, 2022); *Pett v. Publishers Clearing House, Inc.*, No. 2:22-cv-11389-DPH-EAS, ECF No. 1, (E.D. Mich. Jun. 22, 2022); *Taylor v. Belvoir Media Grp.*, No. 1:22-cv-00477-HYJ-RSK, ECF No. 1, (W.D. Mich. May 30, 2022); *Taylor v. Active Interest Media*, No. 1:22-cv-00447-HYJ-RSK, ECF No. 1, (W.D. Mich. May 17, 2022); *Nashel v. New York Times Co.*, 2:22-cv-10633-SJM-DRG, ECF No. 1, (E.D. Mich. Mar. 24, 2022); *Ouellette v. Entrepreneur Media, Inc.*, No. 1:21-cv-11799-TLL-PTM, ECF No. 1, (E.D. Mich. Aug. 4, 2021).

[2] To distinguish between the unamended version of the PPPA at issue here and the amended version passed in 2016, the latter version is referred to as the "Amended PPPA" or "Am. PPPA."

interest in the books or other written materials a person chooses to buy, rent, or borrow.[3]  Consistent with its narrow purpose, the statute prohibits only persons who are "engaged in the business of" selling such written materials at retail from identifying a person "as having purchased, leased, rented, or borrowed" such material. PPPA, § 445.1712. Having apparently exhausted the universe of entities that actually sell magazines at retail, Plaintiff's counsel has sued NAR, a trade association of real estate professionals that provides an unsolicited trade magazine to all its members at no additional charge.  NAR's alleged disclosure of the recipient list of a free magazine does not fall within the PPPA's prohibition on identifying a person "as having purchased, leased, rented, or borrowed" written material, and its application here would not serve the statute's purpose: to prevent disclosure of Michigan residents' personal reading choices.

The Court should dismiss the Amended Complaint for several reasons.  ***First***, the Court lacks subject-matter jurisdiction because as a factual matter, Plaintiff has not suffered an injury in fact and lacks Article III standing.  The affidavit submitted with this Motion and documents attached to the FAC establish that NAR did not identify Plaintiff to anyone "as having purchased, leased, rented, or borrowed" books

---

[3] *See* H.B. No. 5331, 1988 Mich. Legis. Serv. 378 (West) (attached as Exhibit F to the FAC) (describing the "apparent problem" as the disclosure of "one's *choice* in videos, records, and books," and stating that the PPPA's purpose is to "protect a consumer's privacy in buying and borrowing such items") (emphasis added).

or other written materials, as required to establish a privacy injury under the PPPA. At most (and there is no credible allegation this occurred during the relevant time frame), the FAC alleges that NAR has at times disclosed to direct mail marketers that its members receive, free of charge, a trade magazine they did not ask to receive. This is not an actionable PPPA disclosure because it does not reveal anything about a retail magazine purchase or Plaintiff's reading *choices*.  Plaintiff's allegations to the contrary are not entitled to the presumption of truth on a factual challenge to standing, and the Court should dismiss the FAC for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1).

***Second***, the FAC fails to state a claim because the PPPA applies only to persons or entities who are "engaged in the business of selling at retail, renting, or lending books or other written materials[.]" M.C.L. § 445.1712(1).  Plaintiff has not sufficiently alleged that NAR—a trade association that sends all members a complimentary magazine—is engaged in that business, or that it sold, rented, or lent Plaintiff any written material.  The FAC and its incorporated documents confirm that NAR provided the magazine solely as a free member benefit and that the value of the magazine is "non-deductible" from membership dues.

***Third***, even if the PPPA has a six-year statute of limitations, Plaintiff has not pleaded any facts showing that NAR disclosed his information during the narrow time frame as to which he may claim damages: May 20 to July 30, 2016.

*Fourth*, even assuming that Plaintiff has sufficiently alleged a disclosure during the narrow time frame, the FAC, its exhibits, and judicially-noticeable documents establish that any such disclosure falls within the PPPA's direct marketing exception.

For these reasons, the Court should dismiss the FAC.

## BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff is a resident of South Lyon, Michigan, who allegedly "subscribe[d] to" REALTOR® Magazine.  FAC ¶ 12, ECF No. 18, PageID.636.  He asserts a single PPPA claim, premised on NAR's purported disclosure of "mailing lists" to "data aggregators, data appenders, data cooperatives, and list brokers."  *Id.*  Plaintiff claims these mailing lists contain his and other Michigan residents' "Private Reading Information," a term he invented for this litigation, which he defines as "customers' information—including their full names, titles of publications subscribed to, and home addresses[.]"  *Id.* ¶ 7.

Plaintiff incorporates into the FAC a screenshot dated January 10, 2022, from NextMark, Inc., a third-party "list broker."  *Id.* ¶ 2 & Ex. A.  Although Plaintiff asserts that NextMark sells a list "contain[ing] the Private Reading Information of 1,413,832 of NAR's active U.S. subscribers," *id.* ¶ 2, the NextMark screenshot does not contain Plaintiff's name or address, or anyone else's. Despite claiming that

anyone could purchase the NextMark list, Plaintiff does not allege he ever ordered the list to see if his name, address, and magazine purchase information ever was on it. *Id.* ¶¶ 2–6. Plaintiff also does not allege that NextMark obtained the information on its list(s) from NAR. *Id.*

The FAC incorporates archived portions of NAR's website from 2016 and 2017 (*id.* ¶ 8 & Exs. B–D), headed "Direct Mail List," which states that NAR's "subscriber names and addresses" can be "rented on a per usage basis" by contacting Lake Group Media by email or phone. *Id.* Plaintiff does not allege he ever contacted Lake Group Media or obtained a record reflecting his name, address, or magazine purchase information from them.

Plaintiff asserts he "purchased his subscription of *Realtor* magazine directly from NAR at the price of $6.00," but fails to mention that the exhibit he relies on states: "members' yearly subscription price *is included in the dues and is non-deductible therefrom*." *Id*. ¶12 & Ex. E (emphasis added).

Despite incorporating NAR's website into the FAC and claiming that NAR's alleged disclosures to third parties fall outside the PPPA's direct marketing exception, *id*. ¶ 74, Plaintiff omits that since throughout 2016, NAR's website has contained a method to opt out of direct marketing mail. Declaration of Colleen Doyle, attached hereto as Exhibit 1 ("Doyle Decl."), ¶¶ 21-23 (attaching screenshot of NAR member profile page containing direct marketing mail opt-out).

-5-

Plaintiff seeks to represent a class consisting of "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period, had their [full names, titles of publications subscribed to, and home addresses] disclosed to third parties by NAR without consent." FAC ¶¶ 7, 52. He requests statutory damages of "$5,000.00 to Plaintiff and each Class member[.]" *Id.* ¶ 76. Plaintiff does not claim he suffered any actual damages as a result of a PPPA violation.

## B.    NAR and REALTOR® Magazine

NAR is the country's largest trade association, representing over 1.5 million members who are engaged in various facets of the real estate industry. Doyle Decl. ¶ 3. NAR's primary goal is to support the right to own, buy, and sell real property. *Id.* NAR provides many benefits to its members, including advocating on their behalf to federal government policymakers, offering designation and certification courses, and providing discounted prices on products and services offered by NAR's business partners. *Id.* ¶ 4. NAR members are permitted to publicize their membership by using the term REALTOR® next to their names. *Id.* ¶ 13. This mark has one meaning: NAR membership, and it signifies a real estate professional's pledge to adhere to NAR's strict code of ethics. *Id.* NAR sends all members REALTOR® Magazine at no additional charge. *Id.* ¶ 5. NAR does not sell subscriptions of the magazine to members. *Id.* NAR members who opt out of receiving REALTOR® Magazine by mail are not refunded any portion of their

membership dues.  *Id.* ¶ 6; FAC ¶ 12 & Ex. E.

### C.    Plaintiff's NAR Membership

Plaintiff became a NAR member in November 2007, he currently is an active NAR member, and he was so throughout 2016.  Doyle Decl. ¶¶ 8-10.  Plaintiff's NAR membership (along with his photo and other information) is advertised on realtor.com, a publicly-available website.  *Id.* ¶ 17.

### D.    The Statutory Scheme

Enacted in 1989 soon after the passage of the federal Video Protection Privacy Act ("VPPA"), the PPPA's stated purpose is to "preserve personal privacy with respect to the purchase, rental, or borrowing of certain materials," Mich. Pub. Acts 1988, No. 378, *eff.* Nov. 7, 1989, as relevant here, "books or other written materials," PPPA § 445.1712(1).  A person violates the PPPA if: (1) they are "engaged in the business of selling at retail, renting, or lending books or other written materials," and (2) they "disclose to any person, other than the customer, a record or other information concerning the purchase, lease, rental, or borrowing of those materials that indicates the identity of the customer."  *Id.*  "Customer means a person who purchases, rents, or borrows a book or other written material."  *Id.* § 445.1711(a). The original version of the PPPA contained a statutory damages provision of $5,000 for a violation of the Act.  PPPA § 445.1715.

In 2016, the Michigan legislature amended the PPPA and removed the

statutory damages provision.  Am. PPPA § 445.1715.  To sue under the amended statute, which went into effect on July 31, 2016, a plaintiff must "suffer [] actual damages as a result of a violation of this act."  *Id.* § 445.1715(2).

## ARGUMENT

**A.  The FAC Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Cannot Establish Article III Standing.**

### 1.  Legal Standard

Article III of the U.S. Constitution limits federal court jurisdiction to "actual cases or controversies, neither of which exists unless a plaintiff establishes his standing to sue."  *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012).  A plaintiff therefore cannot "litigate a case in federal court without establishing *constitutional* standing[.]"  *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007) (emphasis in original).  This is true "even in the context of a statutory violation."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotations and citations omitted).  A plaintiff can establish he has standing only if: (1) he suffers an injury in fact which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Soehnlen v.*

*Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016).  These requirements ensure that plaintiffs have a "personal stake in the outcome of the controversy as to warrant their invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Id.* (quotations omitted).

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle to seek dismissal for lack of standing.  *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) ("Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").  A defendant may pursue either a factual or facial challenge to standing.  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack contests the sufficiency of the pleadings, and a factual attack contests the actual truth of the jurisdictional allegations.  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  A defendant making a factual attack may use sworn testimony to expose the plaintiff's failure to comport with subject-matter jurisdiction prerequisites.  *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).[4]  There are no "safeguards to the plaintiff" when a defendant raises a factual attack.  *RMI Titanium Co. v.*

---

[4] A defendant may make a factual challenge before answering a complaint. *Mathews v. ALC Partner Inc.*, No. 4:08-cv-10636, 2009 WL 2390526, at *4 (E.D. Mich. July 31, 2009) ("a rule permitting factual attacks on the jurisdictional basis of a complaint to occur only after an answer is filed is utterly incompatible with the Sixth Circuit's clear and repeated holding that such a factual attack is properly brought by motion under Federal Rule of Civil Procedure 12(b)(1)").

*Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citation omitted). There is (1) no presumptive truthfulness attached to the plaintiff's allegations; (2) the burden to establish subject matter jurisdiction shifts to the plaintiff; and (3) the Court may weigh the evidence before it and resolve factual disputes.  *Id.*

### 2.    Plaintiff Lacks Article III Standing.

Plaintiff lacks standing because the only asserted (and possible) injury in fact under the PPPA is an invasion of privacy in one's reading choices, and he has not suffered any such injury.  Courts in the Sixth Circuit have consistently held that Article III standing for an alleged PPPA violation must be based on the "nonconsensual dissemination of information that reflects a plaintiff's personal reading *choices*, which acutely invades a protected right to privacy in such matters and, thus, inflicts harm in a concrete and particularized way, albeit intangibly." *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 676–78 (E.D. Mich. 2022) (emphasis added) ("Defendant's violation of the PPPA, assumed true, violated Plaintiffs' statutorily conferred right to privacy in their *reading habits*—an intangible harm presenting ample constitutional mooring for Article III purposes.") (emphasis added).  *See also Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017); *Lin v. Crain Commc'ns Inc.*, No. 19-cv-11889, 2020 WL 248445, at *6 (E.D. Mich. Jan. 16, 2020) ("The PPPA gives [plaintiff] a legally protected interest in the privacy of his *reading choices*.") (emphasis added); *Raden v. Martha Stewart*

-10-

*Living Omnimedia, Inc.,* No. 16-cv-12808, 2017 WL 3085371, at *3 (E.D. Mich. Jul. 20, 2017) (same).

These cases are consistent with the Supreme Court's instruction that a plaintiff "does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2220 (2021) (quotations and alterations omitted). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id*. at 2197, 2200 (citing *Spokeo, Inc.*, 578 U.S. at 340). Accordingly, Plaintiff has standing only if he can show an invasion of privacy in the reading material he affirmatively chose to receive—*i.e.*, material he purchased at retail, rented, or borrowed—*and* that the "intangible injur[y]" is closely related to "a harm that traditionally been regarded as providing a basis for a lawsuit in English or American Courts." *Id.* (citing *Vermont Agency of Natural Resources v. United States ex. rel. Stevens*, 529 U.S. 765, 775–777 (2000)).[5]

---

[5] In *ex. rel. Stevens*, the Supreme Court held that a plaintiff who brought a False Claims Act *qui tam* action had standing due to the "long tradition of *qui tam* actions in England and the American Colonies." *Stevens*, 529 U.S. at 774. Judge Murphy's recent decision in *Nashel v. The New York Times Company*, strongly suggests that the narrow privacy injury protected by the PPPA is *not* "closely related" to a "traditional" common-law harm because "no Michigan case filed before 1989 (the PPPA's effective date) included a tort invasion-of-privacy claim based on the right to privacy in one's reading materials or the dissemination of one's name and address." *Nashel v. New York Times Co.*, No. 2:22-cv-10633, 2022 WL 6775657, at

Plaintiff alleges that he "purchased his subscription to *Realtor* magazine directly from NAR at the price of $6.00." FAC ¶ 12. But that allegation is demonstrably false. Plaintiff is an NAR member, and he was a member throughout 2016. Doyle Decl. ¶ 8. The very document Plaintiff incorporates into the FAC clearly states, "Members' yearly subscription price *is included in the dues and is non-deductible therefrom*." FAC Ex. E; *see also* Doyle Decl. ¶ 5. Plaintiff did not "purchase his subscription" to REALTOR® magazine; he received it for free as a member. Because he did not purchase the magazine, he cannot establish the narrow privacy injury protected by the PPPA. *See Lin*, 2020 WL 248445, at *6 (failure to establish the PPPA's "as having purchased" element is fatal to a PPPA claim because the PPPA solely protects an individual's right of privacy in the reading material he chooses to purchase, lease, rent, or borrow).

The Michigan legislature could have extended the PPPA's protections to reading materials a person *receives*, but it cabined the statute's reach to written materials "purchased, leased, rented, or borrowed." M.C.L. § 445.1712(1). There is good reason for this limitation: There is no conceivable privacy interest to protect for the passive receipt of unrequested books or magazines. *See* FAC ¶ 21 (explaining that the related Video Privacy Protection Act "protects the selection of books that

---

*4 (E. D. Mich. Oct. 11, 2022) (collecting cases). The Court can dismiss the FAC for lack of Article III standing on this alternative basis.

we *choose* to read") (emphasis added); *see also Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 586 (S.D.N.Y. 2016) (quoting the legislative history of the PPPA, which states that Michigan wanted to enact a statute that would protect "one's *choice* in videos, records, and books") (emphasis added).

Plaintiff's claimed privacy injury is further undermined because he publicly touts his NAR membership—and by extension his receipt of REALTOR® Magazine.  All NAR members, including Plaintiff, are allowed to publicize their NAR membership by using the term REALTOR® next to their names.  Doyle Decl. ¶ 13.  The REALTOR® mark has one meaning: member of NAR and the member's agreement to adhere to NAR's strict Code of Ethics.  *Id.*  NAR members can be identified by searching realtor.com, a publicly-available website, and only active NAR members are displayed on realtor.com's "Find a REALTOR®" directory.  *Id.* ¶¶ 14-15.  Plaintiff's realtor.com profile prominently displays the REALTOR® mark and his NAR membership.  *Id.* ¶ 20 & Ex. A.  Plaintiff cannot claim a privacy interest in information he publicly disseminates.  *See Jones v. Lacey*, 108 F. Supp. 3d 573, 584 (E.D. Mich. 2015) ("a would-be plaintiff cannot assert a constitutional information-privacy claim as to information that was already in the public realm at the time of the alleged privacy breach").

Because Plaintiff cannot demonstrate an injury under the PPPA, he lacks Article III standing. The Court should therefore dismiss the FAC for lack of jurisdiction.

### B.    The FAC Must Be Dismissed for Failure to State a Claim.

Even assuming Plaintiff has standing (he does not), the FAC is defective on many levels and should be dismissed for failure to state a claim. First, Plaintiff has failed to plead facts sufficient to show that the NAR is "engaged in the business of" selling reading materials, a critical element of a PPPA claim. Second, the FAC does not sufficiently allege that NAR violated the PPPA within the narrow window between May 20 and July 30, 2016 (or February 9 and July 30, 2016).

### 1.    Legal Standard

A complaint should be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand dismissal under Rule 12(b)(6), a plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference" that the defendant is liable for the alleged misconduct. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining plausibility, the Court may rely on "a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Id.*

-14-

Although the Court must otherwise accept all a complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor, the allegations must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Threadbare allegations are insufficient, and the Court "need not accept as true legal conclusions or unwarranted factual inferences[.]" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation omitted).

On a motion to dismiss, the Court may consider documents outside of the Complaint that are "publicly availabl[e], and judicially noticeable" if central to Plaintiff's claim. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022). If the pleadings "internally contradict verifiable facts central to his claims," then a plaintiff's allegations are implausible. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). *See also Kaplan v. Univ. of Louisville,* 10 F. 4th 569, 576 (6th Cir. 2021) ("When an exhibit contradicts the complaint, 'the exhibit trumps the allegations.'") (internal citation omitted).

### 2.    NAR is Not "Engaged in the Business of" Selling Written Materials.

The Court should dismiss the FAC for failure to plead facts demonstrating that NAR is "engaged in the business of selling at retail, renting, or lending books or other written materials." M.C.L § 445.1712(1). As a threshold matter, Plaintiff

does not allege any facts indicating that NAR rents or lends REALTOR® Magazine, much less that it is "engaged in the business" of this. The FAC's sole factual allegation concerns the sale prong: "Plaintiff purchased his subscription to *Realtor* magazine directly from NAR at the price of $6.00." FAC ¶ 12. This allegation falls far short of pleading that NAR is "engaged in the business of selling" REALTOR® Magazine "at retail," and in any event is directly contradicted by the FAC's Exhibit E, as discussed below.

A complaint must contain more than legal conclusions and bare recitations of a claim's elements. *Gavitt*, 835 F.3d at 640–41; *see also Ayers v. Gabis*, No. 20-cv-11735, 2021 WL 4785751, at *3 (E.D. Mich. Apr. 2, 2021), *report and recommendation adopted by*, 2021 WL 4316853 (E.D. Mich. Sept. 23, 2021) (recommending dismissal because "Plaintiff offered no factual support upon which a conspiracy could be based" and "[t]he conspiracy allegations are nothing more than conclusory, vague assertions which assert a conspiracy existed among the defendants."). Courts will not consider conclusory allegations unsupported by any alleged facts. *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (dismissing a claim that was supported only by conclusory allegations with "no facts to support those contentions."). Here, the FAC contains a single, conclusory allegation that NAR is "engaged in the business of" selling written materials as a "magazine publisher that sells subscriptions to consumers[.]" FAC ¶ 60. Plaintiff's

-16-

lone "engaged in the business of" allegation finds no factual support in the FAC. Plaintiff has alleged nothing about NAR's business and how it allegedly involves the selling of written materials at retail, as required by the PPPA. This threadbare allegation therefore does not satisfy the pleading standing set forth in *Twombly* and *Iqbal*, and the FAC should be dismissed for that reason.

In addition to being threadbare, the allegation that NAR "sells subscriptions to consumers," *id.* ¶ 60, is directly contradicted by Exhibit E. The Sixth Circuit repeatedly has held that "[w]hen an exhibit contradicts the complaint, 'the exhibit trumps the allegations.'" *Kaplan*, 10 F. 4th 569, 576 (quoting *Cates v. Crystal Clear Techs., LLC,* 874 F.3d 530, 536 (6th Cir. 2017). Exhibit E makes clear that NAR is *not* engaged in the business of selling magazines at retail. Among other things, it indicates that "100.0" percent of the magazines circulated were provided as a "Membership Benefit" to NAR's members and that the $6 subscription "price" was "included in the dues and is non-deductible therefrom." FAC Ex. E. In other words, far from being engaged in the business of selling magazines at retail, NAR did not sell a magazine to *any* member.

Because Plaintiff has failed to sufficiently allege that NAR is "engaged in the business of" selling books or other magazines "at retail," the Court should dismiss the FAC.

###### 3.     Plaintiff Fails to Allege Facts Sufficient to Show that NAR Disclosed Plaintiff's PRI Between May 20 and July 30, 2016.

Although the Michigan Supreme Court has not yet decided the statutory limitations period for the PPPA, other federal courts have recognized that Section 600.5805(2)'s three-year limitations period applies to PPPA claims.  *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017); *Edwards v. Hearst Commc'ns, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016).   Under the three-year statute of limitations, Plaintiff's claim, which is alleged to have accrued prior to July 30, 2016, is plainly time-barred.

Nevertheless, Plaintiff contends that PPPA claims should be governed by the six-year catch-all period contained in M.C.L. § 600.5813.  FAC ¶ 1, n.1. Section 600.5813 provides: "All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

But even if Section 600.5813's six-year limitations period applies, the Court should dismiss the FAC because Plaintiff has failed to sufficiently plead compliance with that limitations period.  Plaintiff filed the original Complaint on May 20, 2022, and a claim for any alleged disclosure before May 20, 2016 is time-barred.[6]  And

---

[6] There is no merit to Plaintiff's assertion that the May 20 to July 30, 2016 time period was extended backwards by 101 days due to a series of executive and administrative orders issued during the COVID-19 State of Emergency. On March 15 and 18, 2020, the Michigan Supreme Court issued administrative orders, which,

even assuming, for the sake of argument, that the relevant time period can be extended backwards by 101 days due to the COVID-19 State of Emergency, Plaintiff's claim for statutory damages would only span between February 9 and July 30, 2016. Apart from conclusory speculation, the Amended Complaint fails to allege *when* NAR allegedly disclosed Plaintiff's identifying purchase records, let alone that this occurred between February 9 and July 30, 2016.

Plaintiff tries to overcome this pleading failure by pointing to the NextMark screenshot from 2022, which post-dates any relevant time period by nearly six years. FAC ¶ 2 & Ex. A. Judge Murphy recently dismissed a PPPA claim brought by the same Plaintiff's counsel that relied on similarly outdated third-party data cards

---

*inter alia,* "restricted operations in trial-level courts throughout the state and facilitated adjournment of pending matters." Mich. Sup. Ct., Administrative Orders 2020-1 and 2020-2. On March 23, 2020, Michigan's Supreme Court issued Administrative Order No. 2020-3, which provided that "[f]or all deadlines applicable to the *commencement* of all civil and probate case-types, including . . . the deadline for the initial filing of a pleading . . . any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included[.]" The Michigan Supreme Court later issued another order that resumed the computation of days on June 20, 2020. *See* Mich. Sup. Ct., Administrative Order 2020-18 (June 12, 2020).

Plaintiff filed the original complaint on May 20, 2022, nearly two years after the state of emergency had ended, and when Plaintiff's asserted six-year statute of limitations had not yet expired. Because the deadline to "commence" the action did not expire during the declared state of emergency, there was no deadline to toll, and Plaintiff should not get the benefit of an additional 101 days. *See Pratt v. KSE Sportsman Media, Inc.,* 586 F. Supp. 666, 675 (E.D. Mich. 2022) (holding that for a PPPA complaint filed on **June 15, 2021**, "[t]he six-year statute of limitations bars Plaintiff's PPPA claims that accrued on or before **June 15, 2015**" (emphasis added)).

because such evidence "creates only suspicion as to whether Defendant violated the PPPA during the pre-July 31, 2016 period," and "a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Nashel v. New York Times Co.*, No. 2:22-cv-10633, 2022 WL 6775657, at *4 (E.D. Mich. Oct. 11, 2022) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)).

Similar to the plaintiff in *Nashel*, Plaintiff asks the court to infer (without factual support) that "[t]he same or substantially similar 'data card' [as the one from 2022] was also publicly ***advertised*** by NAR . . . for the entire duration of the pre-July 31, 2016 time period[.]" FAC ¶ 3 (emphasis added). Crucially, Plaintiff does not allege, apparently because he has no basis for doing so, that NAR actually *disclosed* his data during the relevant time period. This pleading failure is particularly notable because Plaintiff and his counsel had every ability to investigate the claim by contacting NextMark (via the "Get More Information" hyperlink), to order the advertised list and see if Plaintiff's name, address, and nonexistent purchase information would be disclosed. FAC ¶ 2 & Ex. A. *See also Wheaton v. Apple Inc.*, No. 19-cv-02883-WHA, 2019 WL 5536214, at *4–5 (N.D. Cal. Oct. 24, 2019) (dismissing PPPA claim against Apple that relied on data card published by third-party data broker that allegedly sold Apple customers' names, addresses, and personal listening information). And as in *Nashel*, "nothing on the data cards

-20-

explains how the list brokers received Defendant's subscription list," which fails to "create a reasonable inference that Defendant violated the PPPA." *Nashel*, 2022 WL 6775657, at *5.

Plaintiff also alleges that in 2016, NAR "was actively disclosing its entire subscriber database to third parties for money."  FAC ¶ 8 & Ex. B.  The document plaintiff seeks to rely on is headed "Direct Mail List" and states: "Reach out to our 1 million real estate professionals through our subscriber list. Subscriber names and addresses are rented on a per usage basis."  *Id.*  As the Sixth Circuit has noted, "selling [Plaintiff's] information under [defendant's] 'list rental business,' [] would fall within the 'direct marketing exception' of § 1713(d)." *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 120 (6th Cir. 2017).  Plaintiff's allegation that he "saw a dramatic uptick in junk mail in his mailbox over the [relevant pre-July 2016 time period]," FAC ¶ 4, only underscores that the claimed disclosure falls within the PPPA's direct marketing exception.  *See* PPPA § 445.1713(d) ("A record or other information described in section 2 may be disclosed only in 1 or more of the following circumstances: (d) If the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer.  The person disclosing the information shall inform the consumer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information.").  Furthermore, Plaintiff has incorporated into the FAC current and

-21-

archived versions of NAR's website, which contains (and has contained, since before 2016) a method to opt out of direct mail marketing.[7]  Doyle Decl. ¶¶ 21-23. Plaintiff's "junk mail" allegation gives rise only to an inference of disclosure that is expressly lawful under the direct-marketing exception.

---

[7] The Court may consider the direct mail opt out that is available on NAR's website because Plaintiff has incorporated current and archived versions of NAR's website into the FAC.  *See Bolton v. Dep't of the Navy Bd. for Correction of Naval Recs.*, 914 F.3d 401, 406 (6th Cir. 2019) ("We 'consider the complaint in its entirety,' including 'documents incorporated into the complaint by reference.'").

# CONCLUSION

For the foregoing reasons, the FAC should be dismissed for lack of Article III standing, or alternatively, failure to state a claim without leave to amend.

Dated:  October 25, 2022      By:  */s/ Tiana A. Demas*
Tiana A. Demas
Philip M. Bowman
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
pbowman@cooley.com
tdemas@cooley.com

Khary J. Anderson
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7800
kjanderson@cooley.com

Suzanne L. Wahl (P71364)
Elise H. Yu (P79344)
ARENTFOX SCHIFF LLP
350 S. Main Street
Suite 210
Ann Arbor, MI 48104
(734) 222-1517
suzanne.wahl@afslaw.com
elise.yu@afslaw.com

*Attorneys for Defendant National Association of Realtors®*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 25, 2022, the foregoing Defendant National Association of Realtors' Motion to Dismiss First Amended Complaint and Memorandum in Support was electronically filed with the Clerk of the Court by utilizing the CM/ECF System, which will provide electronic notification to all counsel of record.

*/s/ Tiana Demas*
Tiana Demas