# EXHIBIT

to Plaintiff's Response to Motion to Dismiss

# *Relevant Cases*

380 F.Supp.3d 679
United States District Court, W.D.
Michigan, Southern Division.

Robert Jeremy HORTON, individually and on
behalf of all others similarly situated, Plaintiffs,

v.

GAMESTOP CORP., d/b/a
Game Informer, Defendant.

Case No. 1:18-CV-596
|
Signed September 28, 2018

**Synopsis**
**Background:** Video-game magazine subscriber brought action alleging that video-game retailer that offered subscription to the magazine was unlawfully selling his personal reading information to third-party marketing, list-rental, and data-mining companies, in violation of Michigan's Preservation of Personal Privacy Act (PPPA), also referred to as the Video Rental Privacy Act (VRPA). Retailer moved to dismiss.

**Holdings:** The District Court, Gordon J. Quist, J., held that:

[1] allegations were sufficient to state claim for violation of VRPA;

[2] amendment to VRPA, limiting recovery to actual damages and removing statutory damages provision, did not apply retroactively;

[3] date of accrual for VRPA claim, rather than the date of filing, governed applicability of amendment limiting recovery to actual damages and removing statutory damages provision; and

[4] even if amendment to VRPA applied, subscriber's allegations were sufficient to allege actual damages under VRPA.

Motion denied.

West Headnotes (9)

**[1]** **Federal Civil Procedure**  Insufficiency in general

When considering a motion to dismiss for failure to state a claim, the court must determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6).

**[2]** **Federal Civil Procedure**  Insufficiency in general

A claim has facial plausibility, as required to survive a motion to dismiss for failure to state a claim, when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Fed. R. Civ. P. 12(b)(6).

**[3]** **Federal Civil Procedure**  Insufficiency in general

Although the plausibility standard for motions to dismiss for failure to state a claim is not equivalent to a probability requirement, it asks for more than a sheer possibility that a defendant has acted unlawfully. Fed. R. Civ. P. 12(b)(6).

**[4]** **Federal Civil Procedure**  Insufficiency in general

A complaint may be dismissed for failure to state a claim if it fails to give the defendant fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 12(b)(6).

**[5]** **Antitrust and Trade Regulation**  Privacy

Video-game magazine subscriber's allegations that retailer that offered subscription to the magazine sold his personal reading information to third-party marketing, list-rental, and data-mining companies, and that retailer's unauthorized disclosure of personal information

caused an influx of print advertisements to his home and marketing calls to his telephone, were sufficient to state claim for violation of Michigan's Preservation of Personal Privacy Act (PPPA), also referred to as the Video Rental Privacy Act (VRPA). Mich. Comp. Laws Ann. § 445.1712.

1 Cases that cite this headnote

**[6]**   **Antitrust and Trade Regulation** ◄🗝 Retroactive operation

Amendment to Michigan's Preservation of Personal Privacy Act (PPPA), also referred to as the Video Rental Privacy Act (VRPA), limiting recovery to actual damages and removing statutory damages provision, does not apply retroactively. Mich. Comp. Laws Ann. § 445.1715.

**[7]**   **Antitrust and Trade Regulation** ◄🗝 Retroactive operation

Date of accrual for claim for violation of Michigan's Preservation of Personal Privacy Act (PPPA), also referred to as the Video Rental Privacy Act (VRPA), rather than the date of filing, governs applicability of amendment limiting recovery to actual damages and removing statutory damages provision. Mich. Comp. Laws Ann. § 445.1715.

1 Cases that cite this headnote

**[8]**   **Antitrust and Trade Regulation** 🗝 Grounds and Subjects

Even if amendment to Michigan's Preservation of Personal Privacy Act (PPPA), also referred to as the Video Rental Privacy Act (VRPA), limiting recovery to actual damages and removing statutory damages provision, did apply to video-game magazine subscriber's allegations that retailer that offered subscription to the magazine was unlawfully selling his personal reading information to third-party marketing, list-rental, and data-mining companies, subscriber's allegations that he would not have purchased the subscription had he

known that his personal information would be disclosed were sufficient to allege actual damages under VRPA. Mich. Comp. Laws Ann. § 445.1715.

2 Cases that cite this headnote

**[9]**   **Antitrust and Trade Regulation** ◄🗝 Privacy

A consumer's allegation that he would not have bought a product or would have paid less for a product had certain information been available to the consumer constitutes an "economic injury" under Michigan's Preservation of Personal Privacy Act (PPPA), also referred to as the Video Rental Privacy Act (VRPA). Mich. Comp. Laws Ann. § 445.1711 et seq.

## Attorneys and Law Firms

**\*681**   Frank S. Hedin, Hedin Hall LLP, Miami, FL, Ian B. Lyngklip, Wedad Ibrahim, Lyngklip & Associates Consumer Law Group PLC, Southfield, MI, Joseph I. Marchese, Philip L. Fraietta, Bursor & Fisher, P.A., New York, NY, for Plaintiffs.

Casie D. Collignon, Matthew D. Pearson, Paul G. Karlsgodt, Baker & Hostetler LLP, Denver, CO, for Defendant.

## OPINION AND ORDER DENYING MOTION TO DISMISS

GORDON J. QUIST, UNITED STATES DISTRICT JUDGE

On May 29, 2018, Plaintiff Robert Jeremy Horton, on behalf of himself and those similarly situated, sued GameStop Corp., alleging that GameStop was unlawfully selling his personal reading information to third-party marketing, list-rental, and data-mining companies between May 29, 2015 and July 30, 2016. The Plaintiff claims that this conduct violated the Preservation of Personal Privacy Act (PPPA), also known as the Video Rental Privacy Act (VRPA). Mich. Comp. Laws § 445.711 *et seq.*

GameStop has moved to dismiss on two grounds: failure to state a claim and applicability of the actual-damages

requirement. Fed. R. Civ. P. 12(b)(6) (ECF No. 8). The Court will deny GameStop's motion.

## I. Background

GameStop offers subscriptions to its video-game magazine, *Game Informer*. Plaintiff alleges that GameStop sold information about its *Game Informer* subscribers to data-mining companies for profit without the customers' written consent. (ECF No. 1 at PageID.1-2.) Specifically, Horton claims that he purchased a one-year subscription to *Game Informer* in 2010, and then again in 2013, and he has renewed his subscription in the years since. Horton maintains that he never agreed to sell or disclose his personal reading information and did not receive notice prior to the disclosures to various third parties. (*Id.* at PageID.11.) According to Horton, due to GameStop's alleged disclosures of his personal reading information, he now receives unwanted junk mail and telephone solicitations and that he suffered an invasion of privacy. Horton also claims that he suffered economic harm because GameStop's sale of his personal reading information rendered his subscription to *Game Informer* less valuable. (*Id.* at PageID.12.)

## II. Legal Standards

 **[1]**  **[2]**  **[3]**  **[4]**  When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Although the plausibility standard is not equivalent to a " 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). A complaint may be dismissed for failure to state a claim if it fails " 'to give the defendant fair notice of what ... the claim is and the grounds upon which it **\*682** rests.' " *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1959 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

## III. Discussion

The VRPA makes it unlawful for a person, or the employee or agent of a person, engaged in the business of selling written material to disclose information personally identifying the customer. Mich. Comp. Laws § 445.1712. The VRPA also authorizes the customer whose information was disclosed in violation of the act to sue for damages. § 445.1715.

### (A) The Complaint Adequately Pleads a Claim.

 **[5]**  GameStop first argues that the facts alleged in the complaint do not rise to the level of plausibility that GameStop is liable. GameStop states that NextMark, a company that purported to sell *Game Informer* subscriber information, says on its website that it does not sell mailing lists, and, moreover, that Plaintiff has not established a connection between GameStop's alleged disclosure of information and the junk mail and solicitations that Horton received. (ECF No. 9 at PageID.51-52.) However, Plaintiff attached as Exhibit B to the complaint a printout from the NextMark website, in which NextMark claims to sell the *Game Informer Magazine* mailing list.[1] (ECF No. 1-2 at PageID.24-26.) Horton also alleged that the "harassing junk mail offerings and phone call solicitations ... are attributable to GameStop's unauthorized sale and disclosure of his Personal Reading Information" (ECF No. 1 at PageID.12) and that "GameStop's disclosure ... caused an influx of third party print advertisements to his home and marketing calls to his telephone" (*Id.* at PageID.17). Given that GameStop possessed the *Game Informer* subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark or other data-mining companies passes the threshold of plausibility.

---

[1]  GameStop cites *Jones v. City of Cincinnati*, No. 1:04-CV-616, 2006 WL 2987820, at *4 (S.D. Ohio Oct. 17, 2006) for the proposition that the Court is not required to accept as true allegations that are contradicted by evidentiary materials. Although GameStop submitted an exhibit attached to its brief in support of its motion to dismiss that shows that NextMark states on its website that it does not sell subscriber lists (ECF No. 9-1 at PageID.64), Plaintiff did not rely on the bare allegation that GameStop sold its PRI but rather provided its own evidentiary materials in the form of a print-out from the

NextMark website that states that the *Game Informer* mailing list was for sale (ECF No. 1-2 at PageID.24-26).

**(B) The Claim Is Not Barred by the Actual-Damages Requirement.**

GameStop's remaining arguments focus on which version of the VRPA applies to Plaintiff's claims. The VRPA was amended in 2016, with an effective date of July 31, 2016. The prior version of the act allowed a customer to recover "[a]ctual damages, including damages for emotional distress, or $ 5,000.00, whichever [was] greater." § 445.1715 (1989) (amended July 31, 2016). However, the post-amendment version limits recovery to actual damages, removing the statutory-damages provision. § 445.1715 (2016). GameStop argues that the actual-damages requirement applies to Plaintiff's claim because the complaint was filed nearly two years after the amendment took effect. Plaintiff counters that his claim accrued prior to the effective date of the amendment.

**[6]  [7]** Both parties acknowledge that the VRPA 2016 amendment does not apply retroactively. *See* **\*683** *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017). However, the parties disagree about whether the date of filing or the date that the claim accrued determines the amendment's applicability. Defendant cites *Raden v. Martha Stewart Living Omnimedia, Inc.*, No. 16-12808, 2017 WL 3085371, at *4 (E.D. Mich. July 20, 2017), *reconsideration denied*, No. 16-12808, 2018 WL 460072 (E.D. Mich. Jan. 18, 2018),[2] which holds that the amended version of the VRPA governs. Plaintiff, however, identifies several Michigan and federal cases which hold that the date of accrual, rather than the date of filing, governs. *See, e.g.*, *Hill v. Gen. Motors Acceptance Corp.*, 207 Mich. App. 504, 513–14, 525 N.W.2d 905, 910 (1994) ("Michigan courts have followed the general rule that the relevant inquiry in determining the applicability of a statute is the date on which the cause of action arose."). Also, the Michigan Supreme Court has stated that the applicable version of the VRPA is the one "in effect at the time of the events giving rise to this case." *In re Certified Question from United States Court of Appeals for Ninth Circuit (Deacon v. Pandora Media, Inc.)*, 499 Mich. 477, 483 n. 7, 885 N.W.2d 628, 630 n. 7 (2016). Thus, the unamended VRPA applies to Plaintiff's claims that accrued prior to July 31, 2016, and, consequently, Plaintiff was not required to plead actual damages.

2

Plaintiff points out in his Response in Opposition to Defendant's Motion to Dismiss that *Raden* has not yet been reviewed by the Sixth Circuit because the decision is not yet appealable (ECF No. 14 at PageID.132).

**[8]  [9]** Additionally, even if the amended VRPA did apply to Plaintiff's claims, Plaintiff has alleged actual damages sufficient to avoid dismissal. A consumer's allegation that he would not have bought a product or would have paid less for a product had certain information been available to the consumer constitutes an economic injury. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (noting that "a consumer's allegation that she would not have bought the product but for the misrepresentation is sufficient to allege causation and to allege economic injury") (quotation marks, alterations, and citation omitted); *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 616 (7th Cir. 2010) (stating that "plaintiffs would not have purchased the products had [the defendant] made certain information known to the consumers and therefore the plaintiffs have been economically injured"). Although the above cases were decided in the context of false advertisement or fraud, one federal district court has found that a plaintiff alleged an economic injury from a violation of the Michigan VRPA when she claimed that she would not have purchased a subscription had she known that her personal information would be disclosed. *Boelter v. Hearst Commc'ns, Inc.*, 269 F.Supp.3d 172, 186 (S.D.N.Y. 2017). Thus, under the applicable pre-amendment version of the VRPA, Plaintiff was not required to allege actual damages, and even if his claims had fallen under the post-amendment version of the VRPA, he has alleged damages sufficient to survive a motion to dismiss.

**IV. Conclusion**

For the foregoing reasons, the Court will deny Defendant's motion to dismiss.

Therefore, **IT IS HEREBY ORDERED** that Defendant's motion (ECF No. 8) is **DENIED**.

**All Citations**

380 F.Supp.3d 679

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

695 Fed.Appx. 117
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1.
United States Court of Appeals, Sixth Circuit.

Rose COULTER-OWENS, individually
and on behalf of others similarly situated,
Plaintiff-Appellant/Cross-Appellee,

v.

TIME INC., Defendant-
Appellee/Cross-Appellant.

Nos. 16-1321 & 16-1380
|
Filed June 26, 2017

**Synopsis**

**Background:** Consumer brought putative class action against
magazine publisher, alleging that publisher disclosed private
information of people who subscribed to magazines through
third-party websites in violation of Michigan's Preservation
of Personal Privacy Act (PPPA), also referred to as the
Video Rental Privacy Act (VRPA). The United States District
Court for the Eastern District of Michigan, George Caram
Steeh, District Judge, 2016 WL 612690, granted publisher's
summary judgment motion. Consumer appealed, and
publisher cross-appealed, challenging consumer's standing to
sue.

**Holdings:** The Court of Appeals, Alice M. Batchelder,
Circuit Judge, held that:

[1] consumer suffered injury-in-fact sufficient to confer
Article III standing;

[2] amendment to PPPA requiring actual damages and
repealing statutory damages provision is not retroactive; but

[3] consumer's purchase of subscription through independent
third-party subscription agent was not a sale "at retail" within
the meaning of PPPA.

Affirmed.

West Headnotes (3)

**[1]**   **Action**   Statutory rights of action

    **Torts**   Persons entitled to sue

Michigan's Preservation of Personal Privacy Act
(PPPA), also referred to as the Video Rental
Privacy Act (VRPA), contained an express
private right to sue, conferring statutory standing
on a person whose information was disclosed
in violation of PPPA, and thus consumer
suffered injury-in-fact sufficient to confer Article
III standing to bring invasion of privacy
action against publisher regarding publisher's
disclosure of consumer's reading preferences.
U.S.C.A. Const. Art. 3, § 2, cl.1; Mich. Comp.
Laws § 445.1712.

9 Cases that cite this headnote

**[2]**   **Antitrust and Trade
Regulation**   Retroactive operation

Amendment to Michigan's Preservation of
Personal Privacy Act (PPPA), also referred
to as the Video Rental Privacy Act (VRPA),
requiring actual damages and repealing statutory
damages provision is not actually remedial and
is not retroactive; new PPPA does not contain
any express statement of intended retroactivity,
it contains a future effective date, given the
extensive substantive changes, such as excising
the statutory damages provision, it cannot be
viewed as merely a clarifying amendment
intended for retroactive application, and the
amendment eliminates vested rights, such as the
right to sue for statutory damages. Mich. Comp.
Laws § 445.1712.

6 Cases that cite this headnote

**[3]**   **Antitrust and Trade
Regulation**   Consumers, purchasers, and
buyers; consumer transactions

Consumer's purchase of publisher's magazine subscription through independent third-party subscription agent was not a sale "at retail" within the meaning of Michigan's Preservation of Personal Privacy Act (PPPA), also referred to as the Video Rental Privacy Act (VRPA); there was no retailer-customer relationship between consumer and publisher, consumer went to a subscription agent's website, ordered subscription, paid for it with a credit card, subscription agent confirmed order, paid any applicable sales tax to government, sent order information to publisher with instruction to fulfill order, and publisher received order from subscription agent and filled it, using order information that subscription agent had provided. Mich. Comp. Laws Ann. § 445.1712.

3 Cases that cite this headnote

**\*118 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**

**Attorneys and Law Firms**

Ryan D. Andrews, Roger Perlstadt, Edelson, Chicago, IL, for Plaintiff-Appellant Cross-Appellee

Jeffrey G. Landis, Marc J. Zwillinger, Zwillgen, Washington, DC, Lara Fetsco Phillip, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Defendant-Appellee Cross-Appellant

Before: SUHRHEINRICH, BATCHELDER, and STRANCH, Circuit Judges.

**Opinion**

ALICE M. BATCHELDER, Circuit Judge.

In this diversity action alleging that disclosure of certain private information was in violation of state law, the plaintiff class representative appeals the summary judgment for the defendant and the defendant challenges the plaintiff's standing to sue. We find that the plaintiff does have standing and AFFIRM.

**I.**

Time Inc. ("Time") publishes and sells magazines. One way that it sells magazines is through third-party subscription agents: a customer places an order and pays the subscription agent; the subscription agent forwards the order information to Time and pays Time some discounted or lower amount (i.e., the agent retains some profit); and Time fulfills the order by mailing the magazine directly to the customer for the duration of the subscription period. The agent never takes physical possession of the magazines. The contracts between Time and the subscription agents are titled "Resale Agreements." The price the subscription agent pays to Time and the profit it makes on the sale are unique to—often different for—each agreement. The subscription agent collects payment from the customer and remits taxes on the sale, if applicable; the agent does not provide Time with credit card or other payment information. And the subscription agent (not Time) addresses and resolves customer-billing or delivery complaints.

Obviously, Time uses the "order information" (customer's name, address, and magazine choice) to fulfill the orders, but Time also sends that information to two other companies: Acxiom Corporation and Wiland Direct. Time does so to facilitate its "list rental business": Time sells ("rents") its subscriber lists to other enterprises (e.g., companies, political groups, charities) who want to target their own marketing to readers of specific magazines. As alleged here, Acxiom is a "vast marketing or data mining database" that enhances Time's subscriber lists with personal or demographic information obtained elsewhere, which enables Time to narrow its lists into focused, and therefore more valuable, subsets. And Wiland is a "marketing intelligence company" that shares its massive consumer database, which is valuable to Time's own marketing endeavors. Time does not seek or obtain customer consent before sharing this order information, but does provide notice of this practice **\*119** in its magazines and allows the subscribers to "opt out."

Rose Coulter-Owens represents a class of customers who purchased certain of Time's magazines (*Time*, *Fortune*, and *Real Simple*) through online subscription agents.[1] Specifically, Coulter-Owens paid $2 for a one-year weekly subscription of presumably 52 issues. (This price was not per issue, but $2 for the entire year, of which the subscription agent did not pay any of the $2 to Time, so Time received no reimbursement for the magazine it was sending to Coulter-Owens for an entire year.) Time shared the

order information with Axciom and Wiland without Coulter-Owens' prior consent. Coulter-Owens sued in federal court, claiming an invasion of privacy in violation of Michigan's Preservation of Personal Privacy Act (PPPA),[2] which has three provisions pertinent here. First, Section 2:

> Except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail ... written materials ... shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712, Sec. 2 (effective 3/9/89 until 7/31/16, when amended) (footnote omitted).

---

[1]   The certified class comprises "[a]ll Michigan residents who between March 31, 2009 and November 15, 2013 purchased a subscription to *TIME*, *Fortune*, or *Real Simple* magazines through any website other than Time.com, Fortune.com, and RealSimple.com." R. 117.

[2]   The district court and Time refer to this statute as the VRPA, i.e., "Video Rental Privacy Act."

Section 3 provides the enumerated exceptions:

> A record or information described in section 2 may be disclosed only in 1 or more of the following circumstances:
>
> (a) With the written permission of the customer.
>
> (b) Pursuant to a court order.
>
> (c) To the extent reasonably necessary to collect payment for the materials or the rental of the materials, if the customer has received written notice that the payment is due and has failed to pay or arrange for payment within a reasonable time after notice.
>
> (d) If the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer. The person disclosing the information shall inform the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information.
>
> (e) Pursuant to a search warrant issued by a state or federal court or grand jury subpoena.

Mich. Comp. Laws § 445.1713, Sec. 3 (effective 3/9/89 until 7/31/16, when amended) (footnote omitted).

Finally, Section 5, the $5,000-per-incident statutory damages provision (since repealed):

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following:
>
>  **\*120**  (a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is greater.
>
> (b) Costs and reasonable attorney fees.

Mich. Comp. Laws § 445.1715, Sec. 5 (effective 11/7/89 until 7/31/16, when amended). Coulter-Owens and the rest of the class of approximately 40,000 subscribers disclaimed any "actual damages" and instead sought $5,000 each (about $220 million total) in statutory damages.

Just to be clear before moving on, Coulter-Owens is not complaining about Time's selling her information under its "list rental business," which would fall within the "direct marketing exception" of § 1713(d). Coulter-Owens is suing Time for submitting this order information (name, address, and magazine choice) into Acxiom's and Wiland's giant stew of personal information already in their possession, such as her gender, race, education, employment, political affiliation, hobbies, etc., furthering a larger dossier on her. For example, Time submits her name, current address, and that she just subscribed to Time magazine, and gets back (hypothetically) a dossier of her age, gender, race, education level, employment history, or other hobbies and interests. With this information, Time places her on a specific list that it can sell to a business, charity, or political group interested in people with her same interests. It is this disclosure of her magazine-subscription information that she claims violates the PPPA.

In moving for summary judgment, Time argued, among other things, that it had not sold magazines to the plaintiff class members "at retail" as required by the PPPA. The district court agreed, finding that the subscription agents were "resellers" not "middlemen" so the sale was not a direct plaintiff-to-defendant sale, and granted summary judgment to Time on this basis. *Coulter-Owens v. Time, Inc.*, No. 12-cv-14390, 2016 WL 612690, at \*3-4 (E.D. Mich. Feb. 16, 2016). Coulter-Owens appeals. Time cross-appeals, arguing that Coulter-Owens lacks standing, a claim that Time did not raise in the district court.[3]

3  Time also challenges the district court's certification of the class. Because of our determination of Coulter-Owens's direct appeal, however, we need not address this class-certification issue on appeal.

## II.

**[1]** Despite Time's raising this jurisdictional claim for the first time on appeal—as a cross-appeal claim in answer to Coulter-Owens direct appeal—we address it first because "[s]tanding is a threshold question in every federal case." *Miller v. City of Wickliffe*, 852 F.3d 497, 502 (6th Cir. 2017). "[W]e review jurisdictional challenges based on standing de novo." *Barry v. Lyon*, 834 F.3d 706, 714 (6th Cir. 2016).

Time contends that Coulter-Owens lacks Article III standing because she cannot prove injury in fact for one of two reasons: (1) *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), applies here to dictate that a mere violation of the PPPA is insufficient to establish injury in fact; or (2) Michigan's 2016 *curative* or *remedial* amendment to the PPPA is retroactive and requires proof of actual damages, which Coulter-Owens is not claiming. Coulter-Owens responds that she does have an injury (and standing) because the PPPA gives her a legally protected interest in the privacy of her reading choices, which Time violated by disclosing that information to third parties. She contends that the Supreme Court's decision in *Spokeo* does not affect this case because it is not on point, and the Michigan legislature's **\*121** amendments to the PPPA do not apply because they are not retroactive.

Since the district court's decision, however, three district court cases have addressed this question and found that a plaintiff does have standing under the PPPA, that *Spokeo* does not change that, and that the new PPPA is not retroactive: *Perlin v. Time Inc.*, No. 16-10635, 237 F.Supp.3d 623, 627–29, 2017 WL 605291, at \*2-3 (E.D. Mich. Feb. 15, 2017); *Moeller v. Am. Media, Inc.*, No. 16-cv-11367, 235 F.Supp.3d 868, 873–75, 2017 WL 416430, at \*3-4 (E.D. Mich. Jan. 27, 2017); *Boelter v. Hearst Commc'ns, Inc.*, 192 F.Supp.3d 427, 437 (S.D.N.Y. 2016). Each of these opinions is thorough and persuasive. In short, given that the PPPA contains an express private right to sue, it confers statutory standing on a person whose information was disclosed in violation of it. Moreover, the disclosure of that information is a cognizable injury in fact for purposes of Article III standing.

**[2]** Here, Time argues that there is no injury because the Michigan legislature has amended the PPPA to require actual damages (repealing the $5,000-per-incident statutory damages provision) and contends that the amendment is retroactive. But under Michigan law, a statute is presumed to operate prospectively unless there is a clear manifestation of contrary intent. *Frank W. Lynch & Co. v. Flex Techs., Inc.*, 463 Mich. 578, 624 N.W.2d 180, 182 (2001). In looking for intent, courts do not find retroactivity simply because a statute relates to an antecedent event, and may not find retroactivity if the new law takes or impairs vested rights under existing laws; but courts will find retroactivity from express language in the statute giving retroactive application, and may find retroactivity for a remedial or procedural act not affecting vested rights. *LaFontaine Saline, Inc. v. Chrysler Grp., LLC*, 496 Mich. 26, 852 N.W.2d 78, 85-86 (2014). The new PPPA does not contain any express statement of intended retroactivity (in fact, it contains a future "effective date"); and given the extensive substantive changes (such as excising the statutory damages provision) it cannot be viewed as merely a "clarifying" amendment intended for retroactive application. In this same way, the amendment eliminates vested rights, such as the right to sue for statutory damages. Consequently, the amendment is not actually remedial and is not retroactive.

Time also argues that the Supreme Court's recent decision in *Spokeo* dictates that the type of PPPA violation alleged here is now insufficient to constitute an injury in fact. In its simplest sense, *Spokeo*, 136 S.Ct. at 1549, held that "a bare procedural violation" of a statute, "divorced from any concrete harm," does not constitute an injury in fact. But the violation at issue here is not a "bare procedural violation"; it is a violation of the PPPA's most basic substantive protection, the privacy in one's reading materials. *Spokeo* does not apply here.

Coulter-Owens and the certified class have standing.

## III.

We review the grant of summary judgment de novo, construing facts and inferences in the light most favorable to the non-moving party. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 842 F.3d 422, 426 (6th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

**[3]**  Coulter-Owens contends that the district court erred by improperly deciding **\*122** for itself the disputed question of material fact of whether the online subscription agents were "resellers" rather than "middlemen," and further by reaching the wrong conclusion on that question. Time replies that the district court was correct that Coulter-Owens had raised no genuine issue of material fact to support her contention that Time had sold magazines to her and the class "at retail," because they purchased the magazines from independent third-parties and, consequently, there was no "retailer-customer relationship" between Coulter-Owens and Time.

In explaining why the purchases through the third-party subscription agents were not "at retail," as meant by the PPPA, the district court focused on the "retailer-customer relationship":

> [T]he statute forbids a person '*engaged* in the business of selling at retail ... written materials' to disclose a 'record or information concerning the purchase' if that disclosure is 'to any other person, *other than the customer*.' Mich. Comp. Laws § 445.1712 (emphasis added).... When reading the term 'at retail' in the context of the entire statute, it is evident that purchases by third-parties do not fall within the statute's reach. The statute permits disclosure of a 'record or information concerning the purchase' if that disclosure is to the 'customer.' ... [T]he statute contemplates a relationship created when there is a sale 'at retail'—*i.e.*, selling goods for use not for *resale*—to a 'customer'—*i.e.*, the person purchasing the magazine from the seller. In this case, the sale was not between defendant (the retailer) and plaintiff/the proposed class members (the customer). Rather, it was a sale from the retailer to a reseller, then to the plaintiff/proposed class members. Therefore, it was not a sale 'at retail' as contemplated by the [PP]PA.

> Th[is] interpretation also makes sense when reading Section 2 of the [PP]PA in context with Section 3. Section 3 of the [PP]PA provides certain exceptions or 'allowable circumstances' of a disclosure of the customer's 'record or information.' Mich. Comp. Laws § 445.1713. For example, one allowable circumstance for disclosure is when the customer consents in writing to the disclosure. *Id.* at § 445.1712(a). For a 'customer' to consent in writing to the disclosure, the statute contemplates a retailer-customer relationship. Here, that relationship is not between plaintiff and defendant, it is between plaintiff and the third-party reseller.

*Coulter-Owens*, 2016 WL 612690, at \*3-4.

Coulter-Owens argues that the subscription agents were "middlemen" (not "resellers"), so Time sold to her "at retail," and cites two Michigan cases to support her distinction between "middlemen" and "resellers." In the first case, *World Book, Inc. v. Department of Treasury*, 459 Mich. 403, 590 N.W.2d 293 (1999), door-to-door encyclopedia salesmen who took orders and collected money on behalf of a publisher who then mailed the encyclopedias directly, were "middlemen." In the second case, *Michigan National Bank v. Department of Treasury*, 127 Mich.App. 646, 339 N.W.2d 515 (1983), a bank that facilitated the purchase of Krugerrands for a customer by negotiating a price with a coin dealer and, upon agreement by the customer, obtaining the Krugerrands from the dealer before providing them to the customer at the negotiated price plus commission, was a "reseller." According to Coulter-Owens, the intermediary is a "reseller" (and itself engaged in sale "at retail") only if it takes physical possession of the goods being sold. She points to the deposition of Time's Vice President of Marketing in which he agreed that the subscription agents did not **\*123** take possession of any magazines or pre-purchase some amount of subscriptions in order to re-sell them; they merely sold orders to be filled directly by Time. From this, Coulter-Owens says that a jury could find that the subscription agents were merely "middlemen" and thus it was Time that was selling "at retail."

Time glosses over the middleman/reseller distinction and contends that *World Book* and *Michigan National Bank* are inapposite, citing cases that found a third-party to be a reseller even without taking physical possession. *See Louisville/Jefferson Cty. Metro Gov't v. Hotels.com*, 590 F.3d 381, 389 (6th Cir. 2009) (finding Hotels.com a "reseller" though it remitted payment to the hotel from the customer). Time takes a different view altogether and insists that, "[t]o be a retailer, the entity must interact with the customer at the time of purchase"—which Coulter-Owens admits did not happen.

Before resolving this "at retail" dispute, however, we can dispose of Coulter-Owens's claim that summary judgment was improper because the question of whether the subscription agents were "middlemen" or "resellers" was a question of material fact for a jury. It was not. There is no dispute about how the transaction occurred: Coulter-Owens went to a subscription agent's website (e.g., Magazines.com), ordered a magazine subscription, and paid for it with a credit card; the subscription agent confirmed the order with Coulter-Owens, paid any applicable sales tax to the government,

and sent Coulter-Owens's order information to Time with instruction to fulfill the order; Time received the order from the subscription agent and filled it, using the order information that the subscription agent had provided. The remaining question was a legal one: given these facts, is the subscription agent a "middleman" or a "reseller," as the law defines it? There was no disputed fact for a jury to decide based on witness testimony, competing evidence, expert opinion, etc. This was a proper issue for summary judgment.

But the real question (the purely legal question) is whether the sale was "at retail," as the law defines it, and we agree with Time that the middleman/reseller distinction is not dispositive. The question, instead, is what "at retail" meant in the PPPA, Mich. Comp. Laws § 445.1712, Sec. 2 (effective 3/9/89 until 7/31/16). One might find it odd to think that the Michigan legislature intended to penalize the disclosure of this information by the subscription agents but not by the publisher (Time), even though (1) the subscription agent would have to disclose this information to Time to fulfill the order and (2) the PPPA would prevent the disclosure by Time if Time sold the same subscription directly from its own website. It is perhaps likely that the legislature intended to regulate any company that sells to the public (as Time does). But because the statute specifically includes the phrase "at retail," it necessarily excludes nonretail sales (and nonretail sellers). Some types of sale, and sellers, are nonretail and it is not unreasonable to conclude that the intermediary subscription agent as used in this case renders Time a nonretail seller.

Whatever nonretail sellers are, it is possible that the PPPA could have further advanced Michigan's aims by reaching them, but 'a State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns.' As it stands, the law restricts those most likely to have protected information.

*Boelter v. Advance Magazine Publishers Inc.*, 210 F.Supp.3d 579, 600-01 (S.D.N.Y. 2016) (quoting *Williams-Yulee v. Fla. Bar*, ––– U.S. ––––, 135 S.Ct. 1656, 1668, 191 L.Ed.2d 570 (2015)).

**\*124** The PPPA includes the phrase "at retail." That phrase has to mean something and at a minimum it means that some types of sales must be "nonretail," which are consequently excluded. There were two sales here: Time's sale to the subscription agent and the subscription agent's sale to Coulter-Owens. Because Coulter-Owens is the end consumer, the sale to her was necessarily "at retail"; the sale from Time to the subscription agent here was not "at retail" under the facts of this case. The district court was correct that the PPPA does not govern this sale.

**IV.**

For the foregoing reasons, we AFFIRM the judgment of the district court.

**All Citations**

695 Fed.Appx. 117, 45 Media L. Rep. 2149

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

586 F.Supp.3d 666
United States District Court, E.D.
Michigan, Northern Division.

Richard PRATT and Larry Jones,
individually and on behalf of all
others similarly situated, Plaintiffs,

v.

KSE SPORTSMAN MEDIA, INC., d/b/a
Outdoor Sportsman Group, Inc., Defendant.

Case No. 1:21-cv-11404
|
Signed 02/15/2022

**Synopsis**

**Background:** Paying subscribers brought putative class action against magazine publisher alleging violations of the Michigan Preservation of Personal Privacy Act (PPPA), arising from alleged sale and disclosure of information to third parties without consent. Defendant moved to dismiss.

**Holdings:** The District Court, Thomas L. Ludington, J., held that:

[1] as a matter of first impression, under Michigan law, as predicted by the district court, a six-year statute of limitations applies to pre-amendment PPPA claims;

[2] PPPA claims accrued, for purposes of the six-year limitations period, on dates that publisher allegedly engaged in nonconsensual disclosures;

[3] Michigan statute providing for a six-year "catch-all" period of limitation has no effect on Article III standing or jurisdiction; and

[4] properly alleged claim under the PPPA confers Article III standing.

Motion granted in part and denied in part.

West Headnotes (19)

**[1]    Limitation of Actions** 🔑 Injuries to the person

**Limitation of Actions** 🔑 Injuries to Property

Purpose of Michigan statute governing limitations period for injuries to persons or property is to codify the existing time periods for traditional torts. Mich. Comp. Laws Ann. § 600.5805.

1 Cases that cite this headnote

**[2]    Federal Civil Procedure** 🔑 Insufficiency in general

Under the rule governing a motion to dismiss for failure to state a claim, a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. Fed. R. Civ. P. 12(b)(6).

**[3]    Federal Civil Procedure** 🔑 Limitations, laches and prematurity

An exception to the general rule that a motion to dismiss for failure to state a claim is an inappropriate vehicle for dismissing a claim based upon the statute of limitations is if the allegations show that relief is barred by the applicable statute of limitations. Fed. R. Civ. P. 12(b)(6).

**[4]    Antitrust and Trade Regulation** 🔑 Time to Sue; Limitations

Under Michigan law, as predicted by the district court, a six-year statute of limitations applies to pre-amendment Michigan Preservation of Personal Privacy Act (PPPA) claims. Mich. Comp. Laws Ann. §§ 445.1711 et seq. (1989), 600.5813.

**[5]    Antitrust and Trade Regulation** 🔑 Privacy

*Pratt v. KSE Sportsman Media, Inc.*, 586 F.Supp.3d 666 (2022)

Michigan created the Preservation of Personal Privacy Act (PPPA) to protect individual consumers from certain disclosures of their personal information. Mich. Comp. Laws Ann. § 445.1711 et seq.

**[6]** **Courts** 🔑 Decisions of United States Courts as Authority in State Courts

Federal district courts' opinions are not dispositive on issues of state law.

**[7]** **Courts** 🔑 Decisions in other circuits

Federal district court is not bound by decisions of other circuits.

**[8]** **Courts** 🔑 Previous Decisions as Controlling or as Precedents

A district court's opinion is never binding precedent.

**[9]** **Courts** 🔑 Decisions of United States Courts as Authority in Other United States Courts

When opinions are from neither the Supreme Court nor a circuit court of appeals, they do not warrant anything in a federal district court.

1 Cases that cite this headnote

**[10]** **Courts** 🔑 Decisions of United States Courts as Authority in State Courts

When Michigan precedent does not expressly address which statute of limitations applies to statutory cause of action, Michigan courts look to federal court authority.

2 Cases that cite this headnote

**[11]** **Antitrust and Trade Regulation** 🔑 Time to Sue; Limitations

Michigan statute providing for a six-year "catch-all" period of limitation applies to pre-amendment Michigan Preservation of Personal Privacy Act (PPPA) claims as statutory causes of action. Mich. Comp. Laws Ann. §§ 445.1711 et seq., 600.5813.

2 Cases that cite this headnote

**[12]** **Limitation of Actions** 🔑 Privacy; disclosure of confidential information

A Michigan Preservation of Personal Privacy Act (PPPA) claim accrues at the time defendant committed its alleged PPPA violations. Mich. Comp. Laws Ann. §§ 445.1711 et seq.

**[13]** **Limitation of Actions** 🔑 Privacy; disclosure of confidential information

Paying subscribers' Michigan Preservation of Personal Privacy Act (PPPA) claims accrued, for purposes of the six-year limitations period for pre-amendment PPPA claims, on dates that magazine publisher allegedly engaged in nonconsensual disclosures of subscribers' private reading information, for purposes of subscribers' putative class action against publisher, arising from alleged sale and disclosure of subscribers' information to third parties without consent. Mich. Comp. Laws Ann. §§ 445.1711 et seq. (1989), 600.5813.

**[14]** **Federal Civil Procedure** 🔑 In general; injury or interest

**Federal Civil Procedure** 🔑 Causation; redressability

Three elements of constitutional Article III standing serve as its irreducible minimum in all cases: (1) the plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest which is concrete and particularized, and actual and imminent, not conjectural or hypothetical; (2) a plaintiff must demonstrate causation, that is, that her injury is fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court; and (3) the plaintiff must prove that it is likely, rather than merely speculative, that a favorable decision could redress the injury. U.S. Const. art. 3, § 2, cl. 1.

**[15]**   **Federal Civil Procedure** 👈 In general; injury or interest

  **Limitation of Actions** 👈 Actions or Proceedings Not Specially Provided For

Michigan statute providing for a six-year "catch-all" period of limitation has no effect on Article III standing or jurisdiction. U.S. Const. art. 3, § 2, cl. 1; Mich. Comp. Laws Ann. § 600.5813.

**[16]**   **Limitation of Actions** 👈 Nature of statutory limitation

Statutes of limitations and other filing deadlines ordinarily are not jurisdictional.

**[17]**   **Limitation of Actions** 👈 Nature of statutory limitation

For a statute of limitations to be jurisdictional, the legislature must have clearly stated it is jurisdictional.

**[18]**   **Antitrust and Trade Regulation** 👈 Private entities or individuals

Properly alleged claim under the Michigan Preservation of Personal Privacy Act (PPPA) confers Article III standing. U.S. Const. art. 3, § 2, cl. 1; Mich. Comp. Laws Ann. § 445.1711 et seq.

**[19]**   **Antitrust and Trade Regulation** 👈 Private entities or individuals

  **Federal Civil Procedure** 👈 Consumers, purchasers, borrowers, and debtors

Paying subscribers sufficiently alleged an injury in fact, as required for Article III standing to bring claims against magazine publisher under the pre-amendment Michigan Preservation of Personal Privacy Act (PPPA), in putative class action against publisher, arising from alleged sale and disclosure of subscribers' information to third parties without consent; alleged violation violated subscribers' statutorily conferred right to privacy in their reading habits. U.S. Const. art. 3, § 2, cl. 1; Mich. Comp. Laws Ann. § 445.1711 et seq. (1989).

**Attorneys and Law Firms**

**\*668** Dennis A. Lienhardt, Sharon S. Almonrode, William Kalas, E. Powell Miller, The Miller Law Firm, P.C., Rochester, MI, Frank S. Hedin, Hedin Hall LLP, Miami, FL, Gregory A. Mitchell, Lawyers Group of Michigan, Southfield, MI, Philip L. Fraietta, Bursor & Fisher, P.A., New York, NY, for Plaintiffs.

Anthony C. Sallah, Jennifer J. Stocker, Barnes & Thornburg LLP, Grand Rapids, MI, Christopher V. Burtley, Barnes & Thornburg LLP, Southfield, MI, Todd Vare, Barnes & Thornburg, Indianapolis, IN, for Defendant.

## OPINION AND ORDER GRANTING AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

THOMAS L. LUDINGTON, United States District Judge

Defendant has filed a motion to dismiss Plaintiffs' Complaint, which alleges violations of the Preservation of Personal Privacy Act (PPPA),[1] Mich. Comp. Laws § 445.1711 et seq. See ECF No. 17. As explained hereafter, Defendant's Motion to Dismiss will be granted and denied in part.

---

[1]   Although other courts have referred to the Michigan statute as the "Video Rental Privacy Act" (VRPA), the Michigan Supreme Court has referred to it as the Preservation of Personal Privacy Act (PPPA), which will be used herein. See Deacon v. Pandora Media, Inc., 499 Mich. 477, 885 N.W.2d 628, 629 n.1 (2016). Michigan amended the PPPA in May 2016. 2016 Mich. Pub. Acts No. 92 (codified at Mich. Comp. Laws § 445.1711 et seq.). The version of the Act in effect before the May 2016 amendment and codified at Michigan Compiled Laws §§ 445.1711–1715 (effective through July 30, 2016), will be called the "PPPA" herein. The version of the Act currently in effect will be called the "2016 PPPA" herein.

**I.**

This case arises from Defendant's alleged disclosure of Plaintiffs' "Private Reading Information" to several data miners that "disclosed their information to aggressive advertisers, political organizations, and non-profit companies," leading to "a barrage of unwanted junk mail." ECF No. 1 at PageID.1–2.

Defendant KSE Sportsman Media, Inc. is a Colorado corporation with its headquarters and principal place of business in New York, New York. *Id.* at PageID.7. Doing business as Outdoor Sportsman Group, Inc.,[2] Defendant publishes several subscription magazines, including *Guns & Ammo, RifleShooter*, and *Handguns. See id.* at PageID.1, 7–8. Plaintiffs Richard Pratt and Larry Jones, paying subscribers of *Guns & Ammo, RifleShooter*, and *Handguns*, filed a class-action complaint individually and on behalf of all others similarly situated. *Id.* at PageID.1.

[2]     Defendant purports to be "the largest media company devoted to bringing the best content and entertainment to America's 80-million+ outdoor enthusiasts." *We Create*, Outdoor Sportsman Grp. (2022), https://www.outdoorsg.com/ [https://perma.cc/HVM9-PBHE].

On June 15, 2021, Plaintiffs filed a complaint alleging that Defendant violated the PPPA. ECF No. 1. Specifically, Plaintiffs contend that Defendant "rents, exchanges, **\*669** or otherwise discloses its customers' [private] information," including "full names, titles of publications subscribed to, and home addresses (collectively 'Private Reading Information'), as well as ... age, gender, income, marital status, occupation, and hunting license status" to data miners "without the written consent of its customers." *Id.* at PageID.4. Because Defendant does not sell exclusive rights to the information, Plaintiffs explain, Defendant "is able to disclose the information time and time again to countless third parties." *Id.* Plaintiffs warn that this practice is extraordinarily dangerous, as the buyers could filter the information to uncover "particularly vulnerable members of society," for example, "women ... over the age of 40, possess a hunting license, and make over $80,000.00 per year." *Id.* at PageID.5. Plaintiffs conclude that Defendant's "rental, exchange, and/or disclosure of its customers' Private Reading Information" violates the [PPPA], because Defendant "does not obtain its customers' written consent." *Id.* at PageID.5.

On November 24, 2011, Defendant filed a Motion to Dismiss, advancing two arguments. *See* ECF No. 17. First, Defendant contends that Michigan's three-year statute of limitations, which applies to "death of a person or *for*

*injury to a person* or property," bars Plaintiffs' PPPA claims. *See id.* at PageID.578–91. According to Plaintiffs, who filed the Complaint on June 15, 2021, their PPPA claims accrued between June 15, 2015 and July 30, 2016. ECF No. 20 at PageID.627; *see* ECF No. 1 at PageID.3–4, 23. Second, Defendant claims that if Michigan's six-year statute of limitations applies instead of the three-year statute of limitations, then Plaintiffs lack an injury in fact sufficient to establish Article III standing. *See* ECF No. 17 at PageID.591–94.

Before addressing the merits of Defendant's Motion, this Court will provide some background of the PPPA and the two Michigan statutes of limitations at issue.

## II.

### A.

Effective January 1, 1963, Michigan passed the Revised Judicature Act, which completely overhauled the organization and jurisdiction of Michigan's court system. *See* 1961 Mich. Pub. Acts No. 236. Among its numerous changes, the Act revised "the time within which civil actions and proceedings may be brought in the courts." *Id.* To that end, the Michigan legislature enacted two statutes relevant to this case: Michigan Compiled Laws § 600.5805 and 600.5813. *See* Joint Comm. on Mich. Procedural Revision, Final Report, Part I, Committee Report and Recommendations, at 366–68 (1959) [hereinafter Joint Comm. Final Report].

 **[1]** Although titled "Injuries to persons or property," Michigan courts refer to § 600.5805, as the "general tort statute of limitations because it is 'a compilation of the limitations on the general tort remedies.' " *Miller-Davis Co. v. Ahrens Constr., Inc.*, 489 Mich. 355, 802 N.W.2d 33, 38 (2011) (quoting Joint Comm. Final Report, at 309). Michigan's legislative history indicates that § 600.5805's purpose was to codify the "[e]xisting time periods" for traditional torts. *Sam v. Balardo*, 411 Mich. 405, 308 N.W.2d 142, 154 (1981) (citing Joint Comm. Final Report, at 309).

For personal injuries that are not traditional torts, the Michigan legislature enacted Michigan Compiled Laws § 600.5813. Michigan's six-year statute of limitations "is a residual, or 'catch-all' period ... which takes effect if no other subsection applies." Kevin Tierney, *Contracts*, 18 Wayne L.

Rev. 265, 293 n.132 (1972) (comparing **\*670** Mich. Comp. Laws Ann. § 600.5807 (1968), with *id.* § 600.5805 (1968)).

These two statutes have worked in tandem for many years. Although litigants have tried to kick sand over the line, § 600.5805 provides a three-year statute of limitations "for damages for injuries to persons or property," while § 600.5813 sets a six-year limit for actions "not based on a contract" that alleged an injury "to some other legally protected interest." *Id.*

## B.

On May 10, 1988, Congress enacted the Video Privacy Protection Act of 1988 (VPPA). Pub. L. No. 100-618, § 2, 102 Stat. 3195 (codified as amended at 18 U.S.C. § 2710). Congress enacted the VPPA "after a newspaper 'published a profile of [Supreme Court nominee and then D.C. Circuit] Judge Robert H. Bork[,]' which contained the titles of 146 films he and his family had rented from a local video store." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015) (quoting S. Rep. No. 100-599, 2d Sess., at 5 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342); *see also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 621 (7th Cir. 2014) (recounting the history of the VPPA). Recognizing, as Justice Brandeis had decades earlier, that "subtler and more far reaching means of invading privacy have become available," *Olmstead v. United States*, 277 U.S. 438, 473, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting), the VPPA sought "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials," as "[t]hese activities are at the core of any definition of personhood." 134 Cong. Rec. S5,396–08, S5,397–01 (May 10, 1988) (statements of Sen. Patrick Leahy).

Effective March 30, 1989, Michigan enacted the Preservation of Personal Privacy Act of 1988 (PPPA). 1988 Mich. Pub. Acts No. 378. The PPPA "lacks any significant litigation history." *Halaburda v. Bauer Publ'g Co.*, No. 12-CV-12831, 2013 WL 4012827, at \*2 (E.D. Mich. Aug. 6, 2013). What can be said of the PPPA is that it "provid[es] greater protections than the federal VPPA, including protection of book purchase or borrowing records." Chad Woodford, Comment, *Trusted Computing or Big Brother? Putting the Rights Back in Digital Rights Management*, 75 U. Colo. L. Rev. 253, 284 n.155 (2004) (citing Mich. Comp. Laws § 445.1712).

The original version of the PPPA contained a "\$5,000-per-incident statutory damages provision." *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) (unpublished). Effective July 31, 2016, however, the Michigan legislature amended the PPPA to remove statutory damages, leaving only actual damages, damages for emotional distress, and reasonable costs and attorney's fees. 2016 Mich. Pub. Acts No. 92.

As a matter of first impression, the heart of this case is whether § 600.5805(2) or § 600.5813 applies to the pre-2016 PPPA. If § 600.5813 applies, then Plaintiffs may recover statutory damages actual damages, damages for emotional distress, and reasonable costs and attorney's fees if successful. If § 600.5805(2) applies, then Plaintiffs' claims are time-barred.

## III.

**[2]**  Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the court construes the pleading in the nonmovant's favor and accepts the motion's factual allegations as true. *See* **\*671** *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The nonmovant need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937 (quotations and citation omitted).

**[3]**  In addition to these general principles, the Sixth Circuit has emphasized that because the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Yet there are exceptions to this general rule, including "[i]f the allegations, for example, show that relief is barred by the applicable statute of limitations." *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing Fed. R. Civ. P. 8(c)).

Michigan's substantive law applies because jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Jackson v. Ford Motor Co.*, 842 F.3d 902, 907 (6th Cir. 2016); *see also Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983) (per curiam) ("Pursuant to the *Erie* doctrine, state statutes of limitations must be applied by federal courts sitting in diversity." (citing *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945))). *See generally Coulter-Owens*, 695 F. App'x 117 (applying Michigan law in a diversity action brought under the PPPA).

Plaintiffs brings their claims under § 2 of the PPPA, which provides that:

> Except as provided in [Michigan Compiled Laws § 445.1713] or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712.[3]

> [3] In May 2016, the Michigan legislature amended the PPPA. *See* S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) (codified at Mich. Comp. Laws § 445.1711 *et seq.*). The 2016 amendment, effective July 31, 2016, does not apply retroactively to claims that accrued before July 31, 2016. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439–41 (S.D.N.Y. 2016) (holding that "the amendment to the [PP]PA does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued." (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286, 114 S.Ct. 1473, 128 L.Ed.2d 168 (1994))). The pre-2016 version of the PPPA applies to this case because Plaintiffs' claims accrued and thus vested before July 31, 2016. *See Horton v. GameStop Corp.*, 380 F.Supp.3d 679, 682–683 (W.D. Mich. 2018).

With this background in mind, this Court will address Defendant's statute-of-limitations argument, *infra* Part IV, and then Defendant's standing argument, *infra* Part V. Admittedly, this is an unusual order to address the issues. But Defendant's standing argument conflates the resolution of the statute-of-

limitations argument **\*672** with Article III's injury-in-fact requirement for standing.

**IV.**

Defendant contends that the three-year statute of limitations from Michigan Compiled Laws § 600.5805(2) governs Plaintiff's Complaint, because it governs "all actions for injury to a person, including invasion of privacy claims." *See* ECF No. 17 at PageID.578–91.

**A.**

As relevant, § 600.5805(2) provides:

> A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within ... 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property.

Mich. Comp. Laws §§ 600.5805(1)–(2).

Under § 600.5805(2), Defendant explains, if the claim "alleges an injury to [a] person, and ... mirrors a claim traditionally recognized in tort, then the claims are subject to the three-year limitations period." ECF No. 17 at PageID.579. Defendant reasons that the PPPA "parallels traditional tort claims for invasion of privacy," because it "protects individuals' privacy rights." *Id.* at PageID.580 (emphasis omitted). Defendant elaborates that Michigan Compiled Laws § 600.5813,[4] the statute of limitations "on which Plaintiffs apparently rely," "only applies if neither [MCL] § 600.5805 nor [MCL] § 600.5807 applies."[5] *Id.* at PageID.579 n.3 (citing *Loc. 1064, RWDSU AFL-CIO v. Ernst & Young*, 449 Mich. 322, 535 N.W.2d 187, 189–90 (1995)). Under this analysis, Defendant adds, Michigan "courts routinely apply the three-year statute of limitations in cases alleging invasions of privacy." *Id.* at PageID.580 (collecting cases). Plaintiffs' PPPA claim alleges invasions of privacy, Defendant asserts, because "Plaintiffs specifically allege that [Defendant] caused personal injury ... by putting them at risk of physical injury." *Id.* at PageID.586. Defendant also notes that, in some unrelated cases, Plaintiffs' counsel "admitted that claims under the [PPPA] are governed by the three-year statute of limitations." *Id.* at PageID.587. Defendant concludes that the

PPPA's codification "does not change the analysis." *Id.* at PageID.589.

[4] Section 600.5813 provides that "[a]ll other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes." Mich. Comp. Laws § 600.5813.

[5] Section 600.5807 provides the statute of limitations for "an action to recover damages or money due for breach of contract or to enforce the specific performance of the contract." Mich. Comp. Laws § 600.5807.

Plaintiffs respond that Defendant's argument that § 600.5805(2) applies "fails as a matter of law because ... a claim for violation of a statute that does not itself provide a limitation period—such as the [PPPA]—is governed by the six-year limitation period set forth in M.C.L. § 600.5813." ECF No. 20 at PageID.614. Plaintiffs elaborate that the Sixth Circuit explicitly held that § 600.5813 applies to statutory causes of action that contain no statute of limitations. *Id.* (citing *Palmer Park Square, LLC v. Scottsdale Ins.*, 878 F.3d 530, 539–40 (6th Cir. 2017)). Plaintiffs emphasize that the Sixth Circuit's case "relies on, and is firmly supported by, [two] decisions of the Michigan Court of Appeals." *Id.* at PageID.614–15 (first citing **\*673** *DiPonio Constr. v. Rosati Masonry Co.*, 246 Mich.App. 43, 631 N.W.2d 59, 66 (2001); and then citing *Dep't of Env't Quality v. Gomez*, 318 Mich.App. 1, 896 N.W.2d 39, 50 (2016)). Plaintiffs bolster their position with twelve pages of federal and Michigan precedent holding that § 600.5813 applies to codified causes of action. *See id.* at PageID.615–27. Plaintiffs conclude that their "claims are timely, and the Motion [to Dismiss] should be denied." *Id.* at PageID.627.

**B.**

[4] A six-year statute of limitations applies to PPPA claims. Mich. Comp. Laws §§ 445.1711 *et seq.*, 600.5813. The long and the short of the legal analysis is that (1) Michigan law governs this question, (2) no controlling Michigan authority is directly on point, (3) Michigan courts look to federal law in the absence of controlling Michigan law, (4) the Sixth Circuit has released a published opinion interpreting Michigan law to resolve this issue, and (5) published Sixth Circuit precedent is controlling authority for this Court. *See generally Palmer Park*, 878 F.3d at 539–40.

Although not directly addressing the PPPA—a statute—the Michigan Court of Appeals, the United States Court of Appeals for the Sixth Circuit, and the United States District Court for the Eastern District of Michigan have each explicitly held that Michigan Compiled Laws § 600.5813 applies to statutory causes of action. *Estes v. Idea Eng'g & Fabrications, Inc.*, 250 Mich.App. 270, 649 N.W.2d 84, 89 (2002) (holding that the six-year "catch-all" period of limitation applies when the right to recovery arises from a statute); *Olschefski v. Northville Pub. Schs.*, No. 229770, 2002 WL 1482610, at \*3 (Mich. Ct. App. July 9, 2002) (citing *Estes* to reverse a Michigan court for not applying Michigan's six-year statute of limitations to a statutory cause of action); *Palmer Park Square, LLC v. Scottsdale Ins.*, 878 F.3d 530, 540 (6th Cir. 2017) ("[T]he Michigan Court of Appeals similarly held that the residual six-year statute of limitations in § 600.5813 applies to statutory causes of action, including those for civil fines."); *accord Smith v. Smith*, No. 19-10330, 2020 WL 2308683, at \*3 (E.D. Mich. May 8, 2020). But that is not the entire story.

**C.**

[5] As Defendant contends, Michigan created the PPPA "to protect individual consumers from certain disclosures of their personal information." *Halaburda v. Bauer Publ'g Co.*, No. 12-CV-12831, 2013 WL 4012827, at \*6 (E.D. Mich. Aug. 6, 2013).

The Michigan legislature enacted the PPPA shortly after Congress enacted the federal Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710. *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at \*2 (E.D. Mich. Jan. 16, 2020). Originally passed "as a criminal statute without any private right of action," the Michigan legislature amended the PPPA "in 1989 to add a civil cause of action." *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 586 (S.D.N.Y. 2016). Like the VPPA, the PPPA aims to " 'preserve personal privacy with respect to the purchase, rental, or borrowing' of written materials, sound recordings, and video recordings." *Lin*, 2020 WL 248445, at \*2 (quoting 1988 Mich. Pub. Acts No. 378 at 1559); *see also* discussion *supra* notes 1, 3.

Effective July 31, 2016, the Michigan legislature amended the PPPA to remove its $5,000 statutory-damages provision, requiring plaintiffs to prove "actual damages" to recover. *See* 2016 Mich. Pub. Acts No. 92 (codified at Mich. Comp. Laws § 445.1715(2)(a)–(b)); *see also Perlin v. Time Inc.*, 237 F.

Supp. 3d 623, 634 (E.D. Mich. 2017) (reasoning that the PPPA's **\*674** amendment "was essentially a deletion of an entire cause of action.").

After the Michigan legislature amended the PPPA, a few federal courts released opinions that assumed the three-year statute of limitations from § 600.5805(2) applied to the PPPA. *See, e.g., Edwards v. Hearst Commc'ns, Inc.*, No. 15CV9279ATJLC, 2017 WL 6458612, at \*7 (S.D.N.Y. Dec. 18, 2017); *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 189 (S.D.N.Y. 2017); *Edwards v. Hearst Commc'ns, Inc.*, No. 15CV9279ATJLC, 2016 WL 6651563, at \*1 (S.D.N.Y. Nov. 9, 2016).

But those opinions assumed that the three-year statute of limitations applied because the parties in those cases did not contest the issue. Indeed, at that time, unlike now, there was no shorter statute of limitations that a defendant might have raised as an affirmative defense. *See* Stephanie A. Sheridan, Meegan Brooks & Surya Kundu, *It's All About that [Data]base—More Unexpected Trouble for Companies that Share Customer Information*, Steptoe (Dec. 8, 2021), https://www.steptoe.com/en/news-publications/its-all-about-that-databasemore-unexpected-trouble-for-companies-that-share-customer-information.html [https://perma.cc/CA9S-7ASH] (explaining that plaintiffs brought "claims for statutory damages under the original version of the PPPA until the final days of the statute's limitations period, which up until recently was widely recognized as being three years," and that "[t]o continue collecting expansive statutory damages, instead of the miniscule (or non-existent) actual damages allowed under the 2016 amendment, the new suits [starting in June 2021] now creatively posit ... a six-year limitations period").

**[6]** **[7]** **[8]** **[9]** In addition, those courts' opinions, like the Opinion of this Court, are not dispositive on issues of Michigan law. *King v. Ord. of United Com. Travelers of Am.*, 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608 (1948) ("[A] federal court adjudicating a matter of state law in a diversity suit i[s], 'in effect, only another court of the State.'" (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945))); *accord Abela v. Gen. Motors Corp.*, 469 Mich. 603, 677 N.W.2d 325, 327 (2004). Similarly, "a district court is not bound by decisions of ... other circuits." *Hall v. Eichenlaub*, 559 F. Supp. 2d 777, 782 (E.D. Mich. 2008) (citing *Ghandi v. Police Dep't of City of Detroit*, 74 F.R.D. 115, 122 (E.D. Mich. 1977)). Further, "a district court's opinion is never binding precedent." *Malam*

*v. Adducci*, 469 F. Supp. 3d 767, 788 (E.D. Mich. 2020) (citing *Camreta v. Greene*, 563 U.S. 692, 709, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011)). Moreover, the opinions are from neither the Supreme Court nor a circuit court of appeals. *See id.* As such, they do not "warrant" anything in this Court. *Hillman Power Co. v. On-Site Equip. Maint., Inc.*, No. 1:19-CV-11009, 2022 WL 193598, at \*3 (E.D. Mich. Jan. 21, 2022).

**[10]** When Michigan precedent does not expressly address which statute of limitations applies to a statutory cause of action, as in this case, Michigan courts look to "Federal court authority." *Glowacki v. Motor Wheel Corp.*, 67 Mich.App. 448, 241 N.W.2d 240, 245–46 (1976).

**[11]** The Sixth Circuit carefully analyzed Michigan precedent to hold that a six-year statute of limitations applies to statutory causes of action, like the PPPA. *See Palmer Park Square, LLC v. Scottsdale Ins.*, 878 F.3d 530, 540 (6th Cir. 2017) ("[T]he Michigan Court of Appeals similarly held that the residual six-year statute of limitations in § 600.5813 applies to statutory causes of action, including those for civil fines.") (citing **\*675** *DiPonio Constr. Co. v. Rosati Masonry Co.*, 246 Mich.App. 43, 631 N.W.2d 59, 65–66 (2001)). That published Sixth Circuit precedent controls this Court. *Adducci*, 469 F. Supp. 3d at 788.

For these reasons, Michigan Compiled Laws § 600.5813 applies to the PPPA. Therefore, plaintiffs may bring a claim under the PPPA until six years from "the time the wrong upon which the claim is based was done regardless of the time when the damage results." Mich. Comp. Laws § 600.5827; *see also Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 661 N.W.2d 557, 560 n.5 (2003) (per curiam) ("The wrong is done when the plaintiff is harmed rather than when the defendant acted." (citing *Stephens v. Dixon*, 449 Mich. 531, 536 N.W.2d 755, 756 (1995))).

### D.

**[12]** Next, this Court must determine whether § 600.5813 bars Plaintiffs' PPPA claim. A PPPA claim accrues "at the time Defendant committed its alleged [PPPA] violations." *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 634 (E.D. Mich. 2017).

**[13]** Plaintiffs timely filed most of their PPPA claims under Michigan Compiled Laws § 600.5813. The Complaint

alleges that the PPPA violations are based on Defendant's nonconsensual disclosures of Plaintiffs' Private Reading Information between June 15, 2015, and July 30, 2016. *See, e.g.*, ECF Nos. 1 at PageID.3, 23; 20 at PageID.627. According to Federal Rule of Civil Procedure 6(a), Plaintiffs had until June 14, 2021, to file any PPPA claims accruing on June 15, 2015.[6] But Plaintiffs filed the Complaint on June 15, 2021. *See generally* ECF No. 1.

6    Six years is 2,190 days. Six years from June 15, 2015, is June 13, 2021, because 2016 and 2020 were leap years, cutting two days. June 13, 2021 is a Sunday. So, the cutoff date gets bumped to Monday, June 14, 2021. Fed. R. Civ. P. 6(a)(1)(C); *see also Freeman v. Rewerts*, No. 18-11549, 2019 WL 4511657, at *3 & n.2 (E.D. Mich. Sept. 19, 2019) (computing the same way).

The six-year statute of limitations bars Plaintiffs' PPPA claims that accrued on or before June 15, 2015. But Plaintiffs also pled PPPA harms accruing from June 16, 2015, to July 30, 2016. Accordingly, any PPPA claims that accrued on or after June 16, 2015, were timely filed on June 15, 2021. Consequently, Defendant's Motion to Dismiss will be granted in part regarding claims accruing on or before June 15, 2015, and it will be denied in part in all other regards.

**V.**

Defendant contends that Plaintiffs lack standing under Article III of the United States Constitution. *See generally* ECF No. 17 at PageID.591–94.

**[14]** Three elements of constitutional standing "serve as its irreducible minimum in all cases." *Miller v. City of Wickliffe*, 852 F.3d 497, 502 (6th Cir. 2017). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "Second, a plaintiff must demonstrate causation—*i.e.*, that her injury is 'fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court.' " *Id.* (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). "Lastly, the plaintiff must prove that it is likely, rather than merely speculative, that a favorable decision could redress the injury." *Id.* (citing *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130).

***676** Defendant's argument is a strawman. Defendant essentially contends that if § 600.5805(2), which covers "injury to a person or property," does not apply to Plaintiffs' claim, then Plaintiffs lack an injury in fact necessary to establish Article III standing. Indeed, in its own words, Defendant argues that if "Plaintiffs assert purely statutory violations, without reference to rights in the common law," then they are precluded "from establishing Article III standing." ECF No. 17 at PageID.591. In other words, Defendant argues that if § 600.5813's six-year statute of limitations for "all other personal actions" applies to the PPPA, then claims brought under the PPPA have no constitutional standing in federal courts. To that end, Defendant heavily relies on *TransUnion LLC v. Ramirez*, –––U.S. ––––, 141 S. Ct. 2190, 210 L.Ed.2d 568 (2021). *See* ECF No. 17 at PageID.593–94.

**A.**

**[15]** **[16]** As a threshold matter, § 600.5813 has no effect on Article III standing or jurisdiction. It is well settled that "[s]tatutes of limitations and other filing deadlines 'ordinarily are not jurisdictional.' " *Musacchio v. United States*, 577 U.S. 237, 246, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016) (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154, 133 S.Ct. 817, 184 L.Ed.2d 627 (2013)); *Chesterfield Mkt., Inc. v. United States*, 469 F. Supp. 2d 485, 487 (E.D. Mich. 2007) ("The failure to abide by a statute of limitations does not affect the court's power to adjudicate a matter. Similarly, the failure to state a claim, although fatal to a plaintiff's case, does not deprive the court of subject matter jurisdiction." (citing *Intermodal Techs., Inc. v. Mineta*, 413 F.Supp.2d 834, 838 (E.D. Mich. 2006))); *see also United States v. Del Percio*, 870 F.2d 1090, 1093 (6th Cir. 1989) ("[E]very circuit court of appeals to address the issue has held that criminal statutes of limitations are waivable affirmative defenses that do not affect the subject matter jurisdiction of the courts.") (collecting cases).

**[17]** For a statute of limitations to be jurisdictional, the legislature must have "clearly stated" it is jurisdictional. *Musacchio*, 577 U.S. at 237, 136 S.Ct. 709; *see, e.g., Henderson v. Shinseki*, 562 U.S. 428, 436, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011) (requiring a "clear indication" that a statute is jurisdictional).

Nothing in the "text, context, and relevant historical treatment" of § 600.5813 indicates that it imposes a

jurisdictional limit. Mich. Comp. Laws § 600.5813 ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."); *see Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010).

For these reasons, contrary to Defendant's assertion, a statutory cause of action does not lack Article III standing simply because Michigan Compiled Laws § 600.5813 applies to it.

### B.

[18] Moreover, it is well established that a properly alleged PPPA claim confers Article III standing.

The Sixth Circuit held that PPPA claims grant Article III standing in *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017). To that end, the *Coulter-Owens* panel reasoned that a violation of the PPPA necessarily arises from the nonconsensual dissemination of information that reflects a plaintiff's personal reading choices, which acutely invades a statutorily protected right to privacy in such matters and, thus, inflicts harm in a concrete and **\*677** particularized way—albeit intangibly. *Id.* ("In short, given that the [PPPA] contains an express private right to sue, it confers statutory standing on a person whose information was disclosed in violation of it. Moreover, the disclosure of that information is a cognizable injury in fact for purposes of Article III standing.").

"Federal district courts in Michigan have consistently come to the same conclusion." *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at \*6 (E.D. Mich. Jan. 16, 2020) (collecting cases); *accord Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 185 (S.D.N.Y. 2017) ("[E]very court to consider the issue of standing under the [PPPA] has concluded that such a violation constitutes a concrete injury in and of itself."); *see also Raden v. Martha Stewart Living Omnimedia, Inc.*, No. 16-12808, 2017 WL 3085371, at \*3 (E.D. Mich. July 20, 2017) ("The PPPA gives Plaintiffs a legally protected interest in the privacy of their reading choices."); *Perlin v. Time Inc.*, 237 F. Supp. 3d at 627–28 (E.D. Mich. 2017) (same); *Kinder v. Meredith Corp.*, No. 14-CV-11284, 2014 WL 4209575, at \*4 (E.D. Mich. Aug. 26, 2014) ("The [PPPA] grants standing to plaintiffs who suffer a statutory violation and does not require actual damages."); *Halaburda v. Bauer Publ'g Co.*, 2013 WL 4012827, at \*3–5 (E.D. Mich. Aug. 6,

2013) (granting Article III standing to a claim brought under the PPPA); *cf.* Jackson Erpenbach, Note, *A Post-*Spokeo *Taxonomy of Intangible Harms*, 118 Mich. L. Rev. 471, 484–85 (2019) (explaining that courts consistency confer standing under the VPPA due to its "historical corollary" to violations of the right to privacy, which "have long been actionable at common law.") (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)).

Inexplicably, Defendant does not address *Coulter-Owens* or any of the numerous other federal decisions, including this Court's decision in *Kinder*, which all conclude that an alleged violation of the PPPA confers Article III standing.

For these reasons, contrary to Defendant's assertion, even if § 600.5813 applies to the PPPA, claims brought under the PPPA have Article III standing.

### C.

Defendant's reliance on *TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S. Ct. 2190, 210 L.Ed.2d 568 (2021) is misplaced. In *TransUnion*, the Supreme Court considered whether two groups of class members bringing claims under the Fair Credit Reporting Act suffered a concrete injury in fact under Article III. *Id.* at 2208–2213. The first group of class members had a misleading credit report "disseminated to third parties." *Id.* at 2208–09. The second group merely had a misleading remark on their credit files that was not disseminated to a third party. *Id.* at 2209. The *TransUnion* Court held that the first group suffered a concrete injury in fact under Article III. *Id.* ("In short, the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III.").

Likewise, Plaintiffs allege that their "Private Reading Information" was disclosed to third parties without their consent. *See* ECF No. 1 at PageID.1–2, 5–6. In this way, *TransUnion* reinforces that Plaintiffs' PPPA claims have Article III standing.

Yet again Defendant appears to conflate a personal injury giving rise to an action for "damages" with the "injury in fact" required for Plaintiffs' dispute to be justiciable in federal court. An action for damages could trigger the limitation period provided in § 600.5805(1) and (2), but that is not the case under the PPPA. Indeed, Article III's injury-in-fact requirement is **\*678** not limited to an "injury to

a person" necessary to trigger § 600.5805(2)'s limitation period. Erpenbach, *supra* Section V.B., at 483 (categorizing intangible yet concrete injuries lower courts have recognized post-*Spokeo*, including "[p]rivacy harms, both those resulting from distribution of plaintiffs' personal information to third parties as well as claims of intrusion upon seclusion and breach of confidence when third parties are absent," and "[r]isks of harm that plaintiffs may suffer from a statutory violation, especially identity theft or potentially fraudulent debt collection").

 **[19]**  Accordingly, though Plaintiffs' PPPA claim does not arise from a personal injury or any actual damages, Defendant's violation of the PPPA, assumed true, violated Plaintiffs' statutorily conferred right to privacy in their reading habits—an intangible harm presenting ample constitutional mooring for Article III purposes. *See Kinder*, 2014 WL 4209575, at *2 (rejecting the defendant's argument that "a statutory violation of [the PPPA], without actual damages, is insufficient to confer standing" before noting that "every single court to consider this interpretation has rejected [defendant's] argument").

In sum, as the Sixth Circuit so aptly put it, "the violation at issue here is not a bare procedural violation; it is a violation of the PPPA's most basic substantive protection, the privacy in one's reading materials." *Coulter-Owens*, 695 F. App'x

at 121 (internal quotations omitted); *see also Perlin*, 237 F. Supp. 3d at 640–42 (same); *Kinder*, 2014 WL 4209575, at *4 (same); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 681–84 (E.D.Mich. 2013) (same). The facts here do not compel a departure from that wisdom.

For these reasons, Plaintiffs' PPPA claim confers Article III standing. Consequently, Defendant's Motion to Dismiss will be denied regarding Plaintiffs' Article III standing and regarding all claims accruing on or after June 16, 2015, and Defendant's Motion will be granted regarding all claims accruing on June 15, 2015. *See* discussion *supra* Section IV.D.

## VI.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 17, is **GRANTED AND DENIED IN PART**. Defendant's Motion is denied regarding Plaintiffs' Article III standing and all claims accruing on or after June 16, 2015. Defendant's Motion is granted regarding all claims accruing on June 15, 2015, which are time-barred.

**All Citations**

586 F.Supp.3d 666

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2022, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com