IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOSHUA MURRAY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL ASSOCIATION OF REALTORS,<br><br>    Defendant. | No. 2:22-cv-11107-SFC-DRG<br><br>HON. SEAN F. COX<br>Magistrate Judge David R. Grand<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT NATIONAL ASSOCIATION OF REALTORS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff's opposition to NAR's Motion to Dismiss ("Motion") only underscores that he has not shown a concrete injury to the narrow interest the PPPA protects: privacy in one's personal reading *choices*. Plaintiff does not dispute the facts set forth in NAR's factual challenge to standing and instead asks the Court to ignore them. That is not the law. And Plaintiff does not explain how NAR possibly could have invaded a privacy interest in his personal reading choices where at most it disclosed that Plaintiff is a NAR member who received, free of charge, a magazine he did not ask for. Further, Plaintiff publicized his NAR membership and thereby his magazine receipt. He therefore lacks Article III standing.

Alternatively, the Court should dismiss the FAC for failure to state a claim. The opposition does not meaningfully address NAR's argument that it is not "engaged in the business" of selling magazines at retail, nor does the opposition elevate above the speculative level the FAC's assertion that NAR disclosed Plaintiff's information during the narrow timeframe when statutory damages were available, whether it is from May 20 or February 10 to July 30, 2016. Plaintiff's sole support for the timing of the alleged disclosure is a third-party data card materially indistinguishable from the one rejected in *Nashel v. New York Times*. Further, the FAC's "Direct Mail List" exhibits, coupled with NAR's direct marketing opt-out, show that the alleged disclosure falls within the PPPA's direct marketing exception.

I. **Plaintiff Lacks Article III Standing**.

Plaintiff's sole rejoinder to NAR's factual challenge to standing is that "the Court should reject Defendant's attempt to disprove the [FAC's] factual allegations in a motion to dismiss[.]" Opp. 6. This argument misses the mark. On a factual challenge to standing, there is no presumptive truthfulness to Plaintiff's allegations, the burden to establish jurisdiction shifts to Plaintiff, and the Court may weigh the evidence and resolve factual disputes. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Plaintiff has not refuted the facts in NAR's Rule 12(b)(1) affidavit, which show he became an NAR member in 2007, he was a member throughout 2016, and he received Realtor® Magazine as a membership benefit. Doyle Decl., ECF No. 20-2 PageID.1215,¶¶ 5, 8. Plaintiff does not dispute that the magazine's "yearly subscription price is included in the dues and is non-deductible therefrom." FAC Ex. E, PageID.676. He concededly publicized his NAR membership and by extension, his receipt of the magazine. Opp. 6, 9. On these uncontested facts, Plaintiff lacks standing because he has not shown an invasion of privacy in the reading material he *chose* to receive by purchasing it at retail. *Coulter-Owens v. Time, Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017).

Plaintiff asserts he has standing simply by alleging a PPPA violation. Opp. 4-5. This facile argument flies in the face of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) and *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). Last week,

a court dismissed a similar mailing list case for lack of standing because: (1) the right protected by the statutes "does not bear the type of 'close relationship' to a traditional basis for lawsuit . . . *Spokeo* [] had in mind," (2) "[i]t does not suffice to allege [defendant's] practice of selling subscriber mailing lists violates" state statutes, and (3) plaintiffs did not allege their names were included on a mailing list sold or otherwise distributed by defendant to another party. *Burke v. Meredith Corp.*, No. 4:21-cv-00335-RGE, ECF No. 34 at 12, 14-15 (S.D. Iowa Nov. 21, 2022) (citation omitted) (Exhibit 1).[1] Like the plaintiffs in *Burke*, Plaintiff does not allege he has ever seen his (or any other Michigan resident's) name on an NAR subscriber list.[2] Nor does Plaintiff explain how NAR could have invaded the narrow privacy interest in the reading material one *chooses* to buy at retail where the magazine was "non-deductible" from Plaintiff's membership dues. FAC Ex. E.[3]

---

[1] *See also Nashel v. New York Times*, No. 2:22-cv-10633, 2022 WL 6775657, at *4 (E.D. Mich. Oct. 11, 2022) ("no Michigan case filed before 1989 included a tort invasion-of-privacy claim based on the right to privacy in one's reading materials or the dissemination of one's name and address.").

[2] To the extent Plaintiff seeks to rely on the alleged receipt of "junk mail" as a basis for a concrete injury, his assertion that the "uptick" occurred between February and July of 2016 (FAC ¶ 4), is implausible and contradicted by the FAC. Plaintiff does not refute that he became an NAR member in 2007, and he never opted out of receiving the magazine. Opp. 8. He asserts NAR sold its "entire subscriber database to third parties," "as far back as the beginning of 2015." FAC ¶¶ 3, 8. If the junk mail uptick were tied to becoming a member, it would have occurred in 2007, not 2016.

[3] Plaintiff's assertion that he chose to receive a mailed copy of the magazine (instead of opting out), Opp. 7, does not change the analysis. He concedes that if he had opted out, he would not have been refunded any dues, which means he paid for his NAR membership, not a magazine. *Id.*; Doyle Decl. ¶ 6; FAC Ex. E.

- 3 -

Plaintiff instead argues that he either bought the magazine by enrolling as an NAR member or he could have chosen to pay the non-member price. Opp. 8. Neither argument has merit. The PPPA does not create a privacy interest in trade association membership choices or benefits, and Plaintiff's speculation about what he could have done is irrelevant to the Article III analysis. Finally, Plaintiff cannot meaningfully refute that there is no privacy interest in the disclosure of his NAR membership and its benefits where he publicized this. *See* Opp. 8 n.2. The Court should dismiss the FAC for lack of standing.

## II. The FAC Must Be Dismissed for Failure to State a Claim.

Plaintiff cannot overcome the FAC's failure to sufficiently allege that: (1) NAR is "engaged in the business of" selling written materials at retail; (2) any disclosure of protected information occurred during the narrow pre-July 31, 2016 time period; or (3) the alleged disclosure falls within the direct marketing exception.

***Engaged in the Business of***: NAR is not "engaged in the business of" selling magazines to its members. FAC Exhibit E shows that 100 percent of NAR's magazines were a "Membership Benefit" and the $6 "price" was "included in the dues and is non-deductible therefrom."[4] Because the FAC shows that NAR did not

---

[4] The Court should reject the new allegations in Plaintiff's opposition. *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541–42 (6th Cir. 2012) ("The court may not take into account additional facts asserted in a memorandum opposing the motion to dismiss"). (citation omitted)).

sell written materials at retail to Plaintiff or other NAR members, the Court can reject contrary allegations. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021)).

***No Disclosure During the Narrow Timeframe***: Even if the statute of limitations for a PPPA claim is six years (not three), *and* Plaintiff should somehow benefit from an additional 101 days for a claim that has not expired, the FAC still fails to allege a violation between February 10 and July 30, 2016.[5]

It is "entirely reasonable to demand that plaintiffs provide sufficient information about the timing" of the allegedly unlawful conduct. *See*, *e.g.*, *Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, No. 15-10058, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015). The FAC—like the one Judge Murphy dismissed in *Nashel*—fails to do this. *See Nashel*, 2022 WL 6775657, at *5. Plaintiff instead asks the Court to make a series of speculative and implausible inferences, including that a data card that post-dates the alleged conduct by some six years is at all relevant to whether NAR may have disclosed Plaintiff's information in 2016. (It is not.) Remarkably, Plaintiff argues that *Nashel* "improperly analyzed the plausibility of *the complaint's*

---

[5] Tolling does not apply, and Plaintiff fails to explain how having an additional 101 days to file his complaint establishes a backward expansion of the relevant class period. *All* the cases Plaintiff cites reflect that that Covid tolling orders are meant to toll deadlines that expired *during* 2020, not 2022, and none of the tolling cases involve claims that *still exist*. Plaintiff claims that NAR violates the PPPA *to this day*. FAC ¶ 2. The only reason Plaintiff ended the "relevant period" when he did is because the Michigan legislature, in response to the first wave of PPPA lawsuits, removed the PPPA's statutory damages provision, effective July 31, 2016. M.C.L. § 445.1715. There is no basis to toll an unexpired claim.

*allegations*," Opp. 19, n.5.⁶ This is precisely what courts are supposed to do on a motion to dismiss. *See*, *e.g.*, *Ashcroft v. Iqbal*, 566 U.S. 662, 664 (2009). As in *Nashel*, Plaintiff fails to plausibly allege that the information in the NextMark screenshot came from NAR. Mot. 4, 22. All that is left is the allegation that in 2016, NAR's website contained a "direct mail list" squarely covered by the PPPA's direct marketing exception. *See Coulter-Owens*, 695 F. App'x at 120 and *infra* at 7.

Plaintiff relies on four inapposite cases that do not address whether a complaint plausibly alleged the disclosure of plaintiffs' information during the relevant timeframe.⁷ In the other case, *Horton v. GameStop, Corp.*, the plaintiff alleged that the defendant's alleged disclosure of his data "caused" him to receive junk mail and calls. 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018). Here, the timing of the alleged "uptick in junk mail" is not plausible. *See* n.3, *supra* p.4. Instead, as in *Nashel*, Plaintiff relies on a third-party data card many years removed from the alleged conduct, which does not "create a reasonable inference that Defendant violated the PPPA." *Nashel*, 2022 WL 6775657, at *5.

---

⁶ Plaintiff's counsel chose not to appeal *Nashel*, despite their contention that it is "an outlier that was wrongly decided." Opp. 16.

⁷ *See Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 874 (E.D. Mich. 2017) (addressing PPPA retroactivity and unjust enrichment claim); *Perlin v. Time, Inc.*, 237 F. Supp. 3d 623, 639–43 (E.D. Mich. 2017) (unjust enrichment); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 587–90 (S.D.N.Y. 2016) (retroactivity, unjust enrichment, and constitutionality); *Boelter v. Hearst Commc'ns*, 192 F. Supp. 3d 427, 452–54 (S.D.N.Y. 2016) (rejecting direct marketing exception argument).

***Direct Marketing Exception***: FAC Exhibit B shows NAR was engaged in direct marketing for the exclusive purpose of marketing goods and services, and this defense appears on the face of the FAC. *Cf. Coulter-Owens*, 695 F. App'x at 120. The cases Plaintiff relies on, *Ruppel v. Consumers Union of U.S., Inc.,* No. 16-CV-2444 (KMK), 2017 WL 3085365 (S.D.N.Y. June 12, 2017) and *Advance Magazine*, did not involve this scenario.[8] Opp. 22–25. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (court may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

For these reasons, the Court should dismiss the FAC for lack of standing, without leave to amend, or for failure to state a claim, with prejudice.

Dated: November 29, 2022

By: */s/ Tiana Demas*
Tiana Demas
Philip M. Bowman
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
tdemas@cooley.com
pbowman@cooley.com

*Attorneys for Defendant National Association of Realtors®*

---

[8] Plaintiff cannot selectively incorporate documents and exclude portions that contradict his claim. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("a defendant may introduce certain pertinent documents if the plaintiff fails to do so. . . Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied.").

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 29, 2022, the foregoing Defendant National Association of Realtors' Reply Memorandum in Support of its Motion Dismiss the First Amended Complaint was electronically filed with the Clerk of the Court by utilizing the CM/ECF System, which will provide electronic notification to all counsel of record.

*/s/ Tiana Demas*
Tiana Demas