# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JOAN BURKE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>    Defendant. | **No. 4:21-cv-00335-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| ADELE HETZEL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>    Defendant. | **No. 4:21-cv-00341-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| MARIBEL RAMIREZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>    Defendant. | **No. 4:21-cv-00344-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

| | |
|---|---|
| BELINDA POWERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>Defendant. | **No. 4:21-cv-00350-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| SHARON MCKINNEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>Defendant. | **No. 4:21-cv-00360-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| CANDYCE MARTO-MAEDEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>Defendant. | **No. 4:21-cv-00366-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

| | |
|---|---|
| NORMA GOLDBERGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>Defendant. | **No. 4:21-cv-00367-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| JULIE BEACH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>Defendant. | **No. 4:21-cv-00376-RGE-SBJ**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

**I.   INTRODUCTION**

Plaintiffs Joan Burke, Adele Hetzel, Maribel Ramirez, Belinda Powers, Sharon McKinney, Candyce Marto-Maedel, Norma Goldberger, and Julie Beach bring this putative class action against Meredith Corporation.[1] Plaintiffs are residents of California, Ohio, South Dakota, Puerto Rico, and Washington, respectively. Meredith is the publisher of numerous subscription magazines. Plaintiffs allege Meredith sold and rented its mailing lists, which included Plaintiffs' names and other information, to third parties. Plaintiffs allege this practice violates their statutory

---

[1] Meredith Corporation now does business as "Dotdash Meredith, Inc." Def.'s Br. Supp. Mot. Dismiss 1 n.1, ECF No. 24-1.

rights of publicity under California, Ohio, South Dakota, Puerto Rico, and Washington law.[2]

Meredith moves to dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Def.'s Mot. Dismiss 1, ECF No. 24. Plaintiffs resist. Pls.' Resist. Def.'s Mot. Dismiss, ECF No. 25. For the reasons set forth below, the Court concludes it lacks subject matter jurisdiction and grants Meredith's motion.

## II.   BACKGROUND

Plaintiffs each purchased at least one subscription to a magazine published by Meredith. Am. Compl. ¶¶ 26–33, ECF No. 19. Plaintiffs allege Meredith "maintains a vast digital database" of its subscribers' information. *Id.* ¶ 40. They allege Meredith discloses its subscribers' names "to data aggregators and appenders," who provide Meredith with "supplemental information" about each subscriber. *Id.* ¶ 41. Plaintiffs allege Meredith "packages this information" into mailing lists, and then sells and rents these mailing lists "to various third parties." *Id.* ¶¶ 2–3, 42–43. The mailing lists allegedly contain information including subscribers' names, home addresses, genders, ages, races, religions, incomes, and political affiliations. *Id.* ¶¶ 3, 40–43, 67, 96, 112; *see also* ECF No. 25 at 1. Plaintiffs describe the "various parties" to whom Meredith sells its mailing lists as "data miners, data aggregators, data appenders, data cooperatives, list rental recipients, list exchange recipients, and/or list brokers." ECF No. 19 ¶ 2.

Plaintiffs allege they were never notified Meredith would use their "name[s] and likeness[es]" by selling mailing lists, nor did they consent to this practice. *Id.* ¶¶ 39, 47. They

---

[2] Plaintiffs Burke, McKinney, and Marto-Maedel sue under California law, Cal. Civ. Code § 3344; Plaintiffs Hetzel and Goldberger sue under Ohio law, Ohio Rev. Code Ann. § 2741.02; Plaintiff Ramirez sues under Puerto Rico law, P.R. Laws Ann. tit. 32, § 3152; Plaintiff Powers sues under South Dakota law, S.D. Codified Law § 21-64-1; and Plaintiff Beach sues under Washington law, Wash. Rev. Code 63.60.050. Pl.'s Mot. Consolidate Cases 3 n.1, ECF No. 14; Pls.' Resist. Def.'s Mot. Dismiss 3–4, ECF No. 25.

4

allege Meredith's practice of selling mailing lists violates their and other class members' rights of publicity under California, Ohio, South Dakota, Puerto Rico, and Washington law. ECF No. 25 at 1; *see* Cal. Civ. Code § 3344; Ohio Rev. Code Ann. § 2741.02; P.R. Laws Ann. tit. 32, § 3152; S.D. Codified Laws § 21-64-1; Wash. Rev. Code § 63.60.050. The five statutes are substantially similar. *See id.* Each statute prohibits the nonconsensual use of an individual's property right in his or her name or likeness for a commercial purpose. *See id.* Plaintiffs allege Meredith's selling of these subscriber mailing lists "constitutes a commercial use of its customers' likenesses" under these right of publicity statutes. ECF No. 19 ¶ 45. Plaintiffs further contend Meredith has "reaped, and continues to reap, significant profits" through its sale of mailing lists in which their names appear. *Id.* ¶ 49. As such, Meredith has allegedly infringed on Plaintiffs' "exclusive property rights in the commercialization of their names and identities." ECF No. 25 at 6.

The matter came before the Court for a hearing on June 13, 2022. Hr'g Tr. Def.'s Mot. Dismiss, ECF No. 29. Attorneys Frank Hedin, Michael Ovca, and J. Barton Goplerud appeared on behalf of Plaintiffs. *Id.* at 3. Attorney Philip Fraietta also appeared on behalf of Plaintiff McKinney. *Id.* Attorneys Tiana Demas, David Charles, and Joseph Mornin appeared on behalf of Meredith. *Id.* Having considered the parties' oral arguments and supporting briefs, the Court grants Meredith's motion to dismiss.

Additional facts are set forth below as necessary.

### III. LEGAL STANDARD

Meredith argues Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing under Article III of the United States Constitution. Def.'s Br. Supp. Mot. Dismiss 2, ECF No. 24-1; *see also Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) ("[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction."), *overruled in part on other grounds by Jones v. R.R.*

*Donnelley & Sons Co.*, 541 U.S. 369 (2004). The party invoking federal jurisdiction bears the burden of establishing standing. *See United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). That party must also demonstrate they have standing for each form of relief sought. *TransUnion L.L.C. v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000)). In considering whether a party has standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The Court does not assess the merits of a plaintiff's claim in the standing inquiry. *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012).

A Rule 12(b)(1) motion can be brought by a party as either a "facial attack" or a "factual attack," the determination of which affects the Court's standard of review. *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 520–21 (8th Cir. 2007) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, a party challenges the sufficiency of the pleadings. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Thus, "the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn*, 918 F.2d at 729 n.6 (citations omitted). Under such review, the Court addresses any deficiency in the pleadings and will "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law." *Stalley*, 509 F.3d at 521. In contrast, under a factual attack, the Court will go beyond the pleadings and consider extrinsic evidence in determining whether it has subject matter jurisdiction. *Osborn*, 918 F.3d at 729 n.6. In such an instance, "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (emphasis, internal quotation marks, and citation omitted).

Meredith argues Plaintiffs' complaint is deficient on its face and does not attempt to

introduce any evidence from outside of the pleadings. *See generally* ECF No. 24-1; *see also* Def.'s Reply Br. Supp. Mot. Dismiss, ECF No. 27. Accordingly, the Court finds Meredith's motion to dismiss is a facial challenge under Rule 12(b)(1) and reviews it as such. Because the Court concludes it lacks subject matter jurisdiction, it does not address Meredith's argument for dismissal under Rule 12(b)(6) for failure to state a claim.

## IV. DISCUSSION

Meredith contends Plaintiffs lack Article III standing to maintain this action in federal court. ECF No. 24-1 at 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). It functions as a "threshold question" a litigant invoking federal jurisdiction must answer before the court may hear the case. *Warth*, 422 U.S. at 498. "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61). To avoid dismissal for lack of standing, a plaintiff "must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing." *Missouri v. Yellen*, 39 F.4th 1063, 1068 (8th Cir. 2022) (internal quotation marks and citation omitted), *petition for cert. filed*, No. 22-352 (U.S. Oct. 14, 2022).

Meredith argues Plaintiffs have not established injury-in-fact. *See* ECF No. 24-1 at 2. Injury-in-fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff

7

in a personal and individual way." *Id.* (internal quotation marks and citation omitted). For an injury to be "concrete," it "must be 'de facto'; that is, it must actually exist." *Id.* at 340. "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* "Various intangible harms" may also be concrete. *TransUnion*, 141 S. Ct. at 2204 (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987) (reputational harms); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (disclosure of private information pertinent to threatened enforcement action); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (intrusion upon seclusion); *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (infringement of free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (infringement of free exercise of religion). "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo*, 578 U.S. at 340. Courts consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 341. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct at 2204.

With these principles in mind, the Court must determine whether Plaintiffs' allegations are sufficient to meet the injury-in-fact requirement for Article III standing. First, the Court will determine whether Plaintiffs suffered a concrete injury as a result of the alleged statutory violations under California, Ohio, Puerto Rico, South Dakota, and Washington law. Next, the Court will consider whether Plaintiffs' alleged risk of future harm from Meredith's right of publicity violations is sufficient to allege a concrete injury.

### A. Concrete Injury from Alleged Right of Publicity Violations

Assuming Meredith violated the right of publicity statutes at issue, as Plaintiffs allege, the Court must decide whether Plaintiffs suffered a concrete injury from these violations. Plaintiffs

8

allege Meredith violated their rights of publicity under several state laws "by selling and/or renting mailing lists that identified by name, address, and other personal attributes, every subscriber to its magazine publications." ECF No. 25 at 6. They claim "significant commercial value" exists in their names. ECF No. 19 ¶ 46. Plaintiffs allege Meredith infringed upon their "exclusive property rights in the commercialization of their names and identities" by selling this information. ECF No. 25 at 6.

Meredith argues Plaintiffs allege only "bare violations" of the right of publicity laws, which, without more, are "insufficient to constitute Article III injury." ECF No. 24-1 at 6. Plaintiffs may not allege a bare violation of a statutory right "divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 341. The mere fact that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" does not result in automatic standing. *Id.* "[O]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205 (emphasis in original). There are, however, some circumstances where the injury-in-fact requirement can be satisfied by a bare violation of a statutory right, so long as that violation is still tied to a concrete harm. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). In such cases, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 578 U.S. at 342 (emphasis in original). Plaintiffs argue this is one such case.

Plaintiffs argue Meredith's alleged statutory violations constitute a concrete "intangible harm." ECF No. 25 at 7. They contend these violations of their rights of publicity bear a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 7 (quoting *Spokeo*, 578 U.S. at 340–41). Plaintiffs assert common law traditionally recognized "the commercial-appropriation branch of the right to

9

privacy," which they describe as "the right to prevent others from using one's name or picture for commercial purposes without consent." *Id.* Plaintiffs find support for their assertion in three cases. *Id.* at 7–8 (citing *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985) (finding "the right of publicity" was part of the common law of Illinois); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (noting "California has long recognized a common law right of privacy for protection of a person's name and likeness against appropriation by others for their advantage"); *Sessa v. Ancestry.com Operations, Inc.*, 561 F. Supp. 3d 1008, 1022 (D. Nev. 2021) (recognizing "[r]ight of publicity claims . . . have their origins at common law")).

Meredith disputes the violation of a state right of publicity statute is a harm traditionally recognized as providing a basis for lawsuit in American courts. *See* ECF No. 27 at 3. Meredith argues Plaintiffs misunderstand the *Spokeo* Court's discussion about history and tradition. *Id.* They explain, "The case on which *Spokeo* relied for the concept of a 'traditional' harm involved *qui tam* actions, which 'originated around the end of the 13th century' and existed in 'England and the American Colonies.'" *Id.* (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774–77 (2000)). Meredith contends the right of publicity statutes under which Plaintiffs sue are not similarly rooted in English and American history. *Id.*

District courts are split on this question. *Compare Callahan v. Ancestry.com, Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893, at *4 (N.D. Cal. June 15, 2021) ("Even if [Cal Civ. Code § 3344, California's right of publicity statute] did not require injury beyond the statutory violation, the rights protected by § 3344 are not analogous to the fundamental and historical privacy rights in the California Invasion of Privacy Act, the Wiretap Act, and the Stored Communications Act.") *with Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 WL 4264674, at *4 (N.D. Ill. Sept. 20, 2021) ("The right of publicity is a recognized basis for a lawsuit in American courts and a violation of the [Illinois Right of Publicity Act] certainly could cause a concrete injury to an individual

10

whose identity was used for commercial purposes without her consent."). *Roberson v. Rochester Folding Box Co.*, 64 N.E. 442 (N.Y. 1902), supports the conclusion there was no "common law analogue" to the right of publicity. ECF No. 27 at 4 n.1. In *Roberson*, the New York Court of Appeals held a woman whose likeness was used to advertise flour without her consent had no remedy in law or equity because there was no property right in the use of one's image, absent libel. *Roberson*, 64 N.E. at 447–48; *see also Pavesich v. New England Life Ins. Co.*, 50 S.E. 68, 77 (Ga. 1905) (explaining the *Roberson* court found "the complaint set forth no cause of action either at law or in equity"); *Time, Inc. v. Hill*, 385 U.S. 374, 381 (1967) (noting *Roberson* "denied the existence" of a "right to pass through this world . . . without having [one's] picture published or [] eccentricities commented upon" "at common law"). The *Roberson* court thoroughly surveyed both United States and English law before concluding the right to control the use of one's name, portrait, or picture without consent in the advertisement or promotion of goods had not "yet found an abiding place in our jurisprudence." *Roberson*, 64 N.E. at 447; *see also Time*, 385 U.S. at 381 (describing the type of conduct involved in *Roberson* as "the appropriation and use in advertising or to promote the sale of goods, of another's name, portrait or picture without his consent").

Applying *Roberson*'s persuasive analysis, it is doubtful the common law traditionally recognized the right to prevent others from using one's name or picture for commercial purposes without consent. *See* ECF No. 27 at 7. The Supreme Court suggests a traditional basis for a lawsuit means a "long tradition" that "conclusively demonstrates" such actions were "the sort traditionally amenable to, and resolved by, the judicial process." *See Vt. Agency of Nat. Res.*, 529 U.S. at 774 (quoting *Steel Co.*, 523 U.S. at 102 (internal quotation marks omitted). Indeed, the example *Spokeo* relies on to illustrate the Supreme Court's understanding of a "long tradition" (*qui tam* actions) is one dating back more than seven hundred years. *See Spokeo*, 578 U.S. at 341 (citing *Vt. Agency of Nat. Res.*, 529 U.S. at 774 ("*Qui tam* actions appear to have originated around the

11

end of the 13th century. . . .")). *Roberson* demonstrates that the right of publicity does not share in this "long tradition." The right of publicity does not bear the type of "close relationship" to a traditional basis for lawsuit that the *Spokeo* Court had in mind. The Supreme Court's recent cautioning that "history and tradition" are "not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal court" informs this conclusion. *TransUnion*, 141 S. Ct. at 2204.

Regardless of whether the right of publicity has a "close relationship" to a traditional harm, the statutory violation of this right must still be tied to a concrete harm. *Spokeo*, 578 U.S. at 341. As the Supreme Court's recent analysis in *TransUnion* makes clear, Plaintiffs here suffered no such concrete harm from the alleged violation of their statutory rights of publicity. In *TransUnion*, a class of plaintiffs whose credit files mistakenly included alerts indicating their names were a "potential match" to a name on a list of terrorists, drug traffickers, and other serious criminals maintained by the United States Treasury Department's Office of Foreign Assets Control sued TransUnion, a credit reporting agency, under the Fair Credit Reporting Act. *TransUnion*, 141 S. Ct. at 2201. The plaintiffs alleged that for 1,853 of the class members, the Treasury Department provided misleading credit reports to third-party businesses. *Id.* at 2202. The remaining 6,332 class members' credit files contained the same misleading alerts, but their files were never disseminated to any third parties. *Id.* The Supreme Court held that under Article III, only those plaintiffs whose inaccurate credit files were disseminated to third party businesses suffered a concrete injury-in-fact. *Id.* at 2208–13. The "mere existence" of misleading alerts in the other plaintiffs' credit files did not constitute a concrete injury capable of providing standing. *Id.* at 2209–10.

The *TransUnion* Court had "no trouble" concluding the class members whose credit files were disseminated to third parties "suffered a harm with a 'close relationship' to the harm

associated with the tort of defamation." *Id.* at 2209. The Supreme Court found the harm from being labeled a "potential terrorist" shared "a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* Thus, the Supreme Court was satisfied this group of plaintiffs were concretely harmed by TransUnion's alleged violations of the Fair Credit Reporting Act. *Id.*

However, the remaining class members, whose credit files merely contained a misleading alert but were not disseminated to third parties, did not suffer a concrete injury. *Id.* at 2210. The Supreme Court concluded "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id.* at 2209 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't Transp.*, 879 F.3d 339, 344 (D.C.C. 2018)); *accord Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016) (finding "retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts"). The Supreme Court further reasoned:

> where allegedly inaccurate or misleading information sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is.

*TransUnion*, 141 S. Ct. at 2210. The Supreme Court concluded the remaining plaintiffs failed to "demonstrate that the misleading information in internal credit files itself constitute[d] a concrete harm." *Id.*

The *TransUnion* Court's reasoning directs the outcome here. Plaintiffs compare themselves to the subset of *TransUnion* class members the Supreme Court found to have standing. *See* ECF No. 25 at 6–7. In fact, they are like the remaining *TransUnion* class members who did not establish standing because they could not demonstrate they suffered any concrete injury. The Court similarly concludes Plaintiffs here allege no concrete injury and, therefore, lack Article III standing.

Plaintiffs argue the injury to their exclusive property interest in their names and identities

13

"has already occurred" because "Meredith has sold its [mailing lists] on the open market, and Plaintiffs' names were included in these [mailing lists] without Plaintiffs' consent." ECF No. 25 at 7; *see also* ECF No. 19 ¶ 43 ("These [mailing lists] are offered for sale in, and, on information and belief, ultimately sold and entered into commerce throughout California, Ohio, Puerto Rico, South Dakota, and Washington"). But Plaintiffs' allegations rely on a series of unreasonable inferences. Plaintiffs speculate that because they subscribe to Meredith publications, and Meredith sells mailing lists containing its subscribers' names on the open market, Plaintiffs' names must have been sold to a third party. Hr'g Tr. 32:16–23, ECF No. 29 at 32; *see also* ECF No. 25 at 7. Plaintiffs concede they have not provided any "specific allegation that a particular person's information was sold" to a third party. Hr'g Tr. 32:16–23, ECF No. 29 at 32. They do not allege their own names or addresses were ever sold to any third party. *See id.*; *see generally* ECF No. 19. Nor do Plaintiffs allege they have ever seen their names on one of Meredith's subscriber mailing lists. *See* Hr'g Tr. 32:16–23, ECF No. 29 at 32; *see generally* ECF No. 19. Indeed, Plaintiffs acknowledge one reason subscriber lists are "valuable" to companies is because the lists can be "targeted" to include only include subscribers with specific attributes. Hr'g Tr. 30:1–4, ECF No. 29. Plaintiffs explain this practice "allows for highly targeted targeting of Meredith's customers." Hr'g Tr. 30:4–5, ECF No. 29. Together, these facts illustrate the unreasonableness of Plaintiffs' inferences their names were sold to an unidentified third party. *See* ECF No. 25 at 6.

Because Plaintiffs do not allege their names were included on a mailing list sold or otherwise distributed by Meredith to another party, the Court finds Plaintiffs are "in a like position to the *TransUnion* class members who learned their credit reports indicated their names were considered a potential match [to a name on a list of terrorists and other serious criminals] but whose credit reports had not been disseminated to potential creditors." *Cf. Verde*, 2021 WL 4264674, at *4.

The Court finds Plaintiffs here, like their counterparts in *TransUnion*, cannot demonstrate they suffered any concrete harm. Regardless of whether a bare violation of a statutory right of publicity could cause a concrete injury to a person whose identity was used for commercial purposes without consent, Plaintiffs' allegations here are not specific enough to demonstrate they suffered a concrete injury. It does not suffice to allege Meredith's practice of selling subscriber mailing lists violates various right of publicity statutes. *See TransUnion*, 141 S. Ct. at 2206 ("[a]n uninjured plaintiff" may not sue to "ensure a defendant's compliance with regulatory law") (internal quotation marks omitted). Plaintiffs fail to show how Meredith's alleged statutory violations harmed them "personally." *Cf. id.* at 2205 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.") (emphasis in original). And just as the "mere presence of an inaccuracy in an internal credit file" not disclosed to any third party in *TransUnion* caused no concrete harm to plaintiffs, the "mere presence" of a subscriber's name on a mailing list not distributed to any third party causes no concrete harm to Plaintiffs in this case. *Id.* at 2210; *cf. Verde*, 2021 WL 4264674, at *5 (holding *TransUnion* "require[s] an allegation of disclosure to a third party to allege a concrete injury caused by a violation of [Illinois's substantially similar right of publicity statute]; alleging only that the statute was violated is not enough to allege an injury in fact"). The inclusion of subscribers' names on mailing lists, without dissemination to any third party, is akin to an unsent letter in a desk drawer. *Cf. TransUnion*, 141 S. Ct. at 2210. It causes no "real" harm to Plaintiffs. *See Spokeo*, 578 U.S. 330, 340 ("A 'concrete' injury must . . . [be] 'real,' and not 'abstract'").

It is well established the Court "may resolve only 'a real controversy with real impact on real persons.'" *TransUnion*, 141 S. Ct. at 2203 (quoting *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019) (Gorsuch, J., concurring)). Plaintiffs fail to demonstrate Meredith's alleged statutory violation has had any "real impact" on them. *Cf. id.* Plaintiffs do not demonstrate

15

they "suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2206. As such, Plaintiffs fail to allege a concrete injury and thus lack Article III standing.

### B.   Concrete Injury from Risk of Future Harm

Plaintiffs must demonstrate they have standing for each form of relief sought. *See TransUnion*, 141 S. Ct. at 2210 (citing *Friends of the Earth,* 528 U.S. at 185). Plaintiffs seek three forms of relief: 1) damages, 2) declaratory relief, and 3) injunctive relief. *See* ECF No. 19 at 23–24. Plaintiffs' failure to establish concrete harm—as determined above—is fatal to their claims for damages and declaratory relief. However, when plaintiffs seek injunctive relief, as Plaintiffs do here, a material risk of future harm can sometimes satisfy the concrete harm requirement of standing. *See TransUnion*, 141 S. Ct. at 2210 ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring . . . ."). The risk of future harm must be "sufficiently imminent and substantial." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n.5 (2013)). The "threatened injury must be certainly impending." *Clapper*, 568 U.S. at 401 (internal quotation marks omitted). Plaintiffs allege Meredith's practice of selling mailing lists containing its subscribers' names puts them at risk of the future harm they will be targeted by "malevolent actors." ECF No. 19 ¶ 5. The Court now considers whether this alleged risk of future harm is sufficient to establish injury-in-fact, and thus standing, for Plaintiffs' injunctive relief claim.

The Court concludes Plaintiffs' asserted risk of future harm is not a concrete harm. As discussed above, Plaintiffs have not alleged their names are included in any mailing list sold to a third party. *See* Hr'g Tr. 32:16–23, ECF No. 29 at 32. As such, the Court finds there is no "certainly impending" risk Plaintiffs will be targeted by "malevolent actors." *See* ECF No. 19 ¶ 5; *Clapper*, 568 U.S. at 410 (internal quotation marks omitted). Because Plaintiffs' complaint does not contain

any allegations of any imminent threatened harms, Plaintiffs lack Article III standing for injunctive relief.

### V. CONCLUSION

Plaintiffs fail to allege sufficient facts to support a reasonable inference they can satisfy the first element of standing: injury-in-fact. Plaintiffs fail to allege a plausible injury-in-fact because they cannot demonstrate any concrete harm. Plaintiffs do not suffer a concrete harm from violation of their statutory rights of publicity. Nor do Plaintiffs suffer a concrete harm from the risk Plaintiffs will be "targeted" by bad actors who acquire their names from one of Meredith's mailing lists. Without demonstrating a concrete harm, Plaintiffs cannot establish Article III standing for any form of relief. *See TransUnion*, 141 S. Ct. at 2214 ("No concrete harm, no standing."). The Court therefore lacks subject matter jurisdiction, and Plaintiffs' complaint must be dismissed. Because the Court lacks subject matter jurisdiction, it will not address Meredith's arguments for dismissal for on other grounds.

For the foregoing reasons, **IT IS ORDERED** that Defendant Meredith's Motion to Dismiss, ECF No. 24, is **GRANTED**. This case is dismissed.

The Clerk of Court is directed to enter judgment in favor of Defendant Meredith Corporation and against Plaintiffs Joan Burke, Adele Hetzel, Maribel Ramirez, Belinda Powers, Sharon McKinney, Candyce Marto-Maedel, Norma Goldberger, and Julie Beach.

The parties are responsible for their own costs.

**IT IS SO ORDERED.**

Dated this 21st day of November, 2022.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE