IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOSHUA MURRAY, individually and on behalf of all others similarly situated, | No. 4:22-cv-11107-FKB-DRG |
| Plaintiff, | HON. F. KAY BEHM<br>Magistrate Judge David R. Grand |
| v. | |
| NATIONAL ASSOCIATION OF REALTORS, | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT NATIONAL ASSOCIATION OF REALTORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| Defendant. | |

Plaintiff's opposition to NAR's Motion to Dismiss ("Motion") underscores the lack of any concrete injury to the narrow interest the PPPA protects: privacy in one's personal reading *choices*. Plaintiff does not dispute NAR's factual challenge to standing and instead asks the Court to ignore jurisdictional facts. That is not the law. And Plaintiff does not explain how NAR possibly could have invaded a privacy interest in his personal reading choices where at most it disclosed that Plaintiff is a NAR member who received a free magazine he did not ask for. Further, Plaintiff publicized his NAR membership and thereby his magazine receipt. He therefore lacks Article III standing.

Alternatively, the Court should dismiss the SAC for failure to state a claim. The opposition does not meaningfully address NAR's argument that it is not "engaged in the business" of selling magazines at retail, nor does the opposition raise above the speculative level the SAC's assertion that NAR disclosed Plaintiff's information during the narrow timeframe when statutory damages were available. Plaintiff's sole support for the timing of the alleged disclosure is a third-party data card materially indistinguishable from those recently rejected in *Nashel v. New York Times* and *Bozung v. Christianbook*. Further, the SAC's "Direct Mail List" exhibits and NAR's direct marketing opt-out, show the alleged disclosure falls within the PPPA's direct marketing exception.

## I.        Plaintiff Lacks Article III Standing.

Plaintiff asks the Court to "reject Defendant's attempt to disprove the factual allegations of the SAC in its motion to dismiss[.]" Opp. 6. This argument misses the mark. On a factual challenge to standing, there is no presumptive truthfulness to Plaintiff's allegations, the burden to establish jurisdiction shifts to Plaintiff, and the Court may weigh the evidence and resolve factual disputes. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).[1] Plaintiff has not refuted the facts in NAR's Rule 12(b)(1) affidavit, ECF No. 31-1 PageID.2531, which show he became an NAR member in 2007, was a member throughout 2016, and received REALTOR® Magazine as a membership benefit. Plaintiff does not dispute that the magazine's yearly subscription price is included in the dues and is non-deductible. He concededly publicized his NAR membership and by extension, his receipt of the magazine. Opp. 13-14.[2] On these uncontested facts, Plaintiff lacks standing as he has not shown an invasion of privacy in the reading material he *chose* to receive by purchasing it at retail. *Coulter-Owens v. Time*, *Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017).

---

[1] Each of the cases Plaintiff cites is inapposite because *none* of them involved a motion to dismiss under Rule 12(b)(1). Opp. 6.

[2] Plaintiff's argument that by publicizing his NAR membership, he was not necessarily publicizing his magazine receipt, misses the mark. Plaintiff does not refute that *all* NAR members receive the magazine unless they opt out, and Plaintiff admits he did not opt out. Opp. 7.

Plaintiff asserts he has standing simply by alleging a PPPA violation. Opp. 4-5. This facile argument flies in the face of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) and *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Courts regularly dismiss mailing list cases for lack of standing where plaintiffs fail to allege their names were included on a mailing list sold or disclosed by defendant to a third party. *See, e.g.*, *Burke v. Meredith Corp.*, No. 4:21-cv-00335-RGE, ECF No. 34 at 12, 14-15 (S.D. Iowa Nov. 21, 2022) ("[i]t does not suffice to allege [defendant's] practice of selling subscriber mailing lists violates" state statutes) (ECF No. 31-2, PAGEID.2548). Like the plaintiffs in *Burke*, Plaintiff does not allege he has ever seen his (or any other Michigan resident's) name on an NAR subscriber list.[3] Nor does Plaintiff explain how NAR could have invaded the narrow privacy interest in the reading material one *chooses* to buy at retail where the magazine was non-deductible from Plaintiff's membership dues. SAC Ex. E.[4]

---

[3] To the extent Plaintiff seeks to rely on the alleged receipt of "junk mail" as a basis for a concrete injury, his assertion that the "uptick" occurred between February and July of 2016 is implausible and contradicted by the SAC. Plaintiff does not refute that he became an NAR member in 2007, and he never opted out of receiving the magazine. Opp. 8. He asserts NAR sold his information to third parties since 2015. If the junk mail uptick were tied to becoming a member, it would have occurred in 2007, not 2016.

[4] Plaintiff's assertion that he chose to receive a mailed copy of the magazine (instead of opting out), Opp. 7, does not change the analysis. He concedes that if he had opted out, he would not have been refunded any dues, which means he paid for his NAR membership, not a magazine. *Id.* 7-8.

Plaintiff instead argues that he either bought the magazine by enrolling as an NAR member or he could have chosen to pay the non-member price. Opp. 8. Neither argument has merit. The PPPA does not create a privacy interest in trade association membership choices or benefits, and Plaintiff's speculation about what he could have done is irrelevant to the Article III analysis. Finally, Plaintiff fails to meaningfully refute that there is no privacy interest in the disclosure of his NAR membership and its benefits because there is no privacy violation "for giving additional publicity to something a person has already made public." *Crane v. Am. Bar Ass'n*, 2023 WL 2603191, at *4 (E.D. Mich. Mar. 22, 2023) (dismissing PPPA claim for lack of standing where the plaintiff publicized his ABA membership and thus his *ABA Journal* subscription). *See* Opp. 8 n.2. The Court should dismiss the SAC for lack of standing.

## II.      **The SAC Must Be Dismissed for Failure to State a Claim**.

Plaintiff cannot overcome the SAC's failure to sufficiently allege that: (1) NAR is "engaged in the business of" selling written materials at retail; (2) any disclosure of protected information occurred during the narrow pre-July 31, 2016 time period; or (3) the alleged disclosure falls within the direct marketing exception.

***Engaged in the Business of***: NAR is not "engaged in the business of" selling magazines to its members. SAC Exhibit E shows that 100 percent of NAR's magazines were a "Membership Benefit" and the $6 "price" was "included in the

dues and is non-deductible therefrom." ECF No. 30-6 PageID.1985.[5] Because the

SAC shows that NAR did not sell written materials at retail to Plaintiff or other NAR

members, the Court can reject contrary allegations. *Kaplan v. Univ. of Louisville*, 10

F.4th 569, 576 (6th Cir. 2021).

**No Disclosure During the Narrow Timeframe**: Even if the statute of

limitations for a PPPA claim is six years (not three), *and* Plaintiff should somehow

benefit from an additional 101 days for a claim that has not expired, the SAC still

fails to allege a violation between February 10 and July 30, 2016.[6]

The Court may dismiss a complaint where the allegations about the timing of

the unlawful conduct are "fairly vague." *Bozung v. Christianbook, LLC*, 2023 WL

2385004, at *3 (W.D. Mich. Mar. 6, 2023). The SAC—like the recently-dismissed

complaints in *Nashel* and *Bozung*—is just that. *See Nashel*, 2022 WL 6775657, at

*5. Plaintiff asks the Court to make speculative and implausible inferences, including

that a data card that post-dates the alleged conduct by some six years is at relevant

to whether NAR may have disclosed Plaintiff's information in 2016. It is not. *See*

---

[5] Plaintiff also alleges that "non-members may pay $56.00 for a subscription" (SAC, ECF No. 30 PageID.1957-58, ¶ 48), but he does not claim he was a non-member or that he bought a non-member subscription during the relevant time period.

[6] Tolling does not apply, and Plaintiff fails to explain how having an additional 101 days to file his complaint establishes a backward expansion of the relevant class period. *All* the cases Plaintiff cites reflect that that Covid tolling orders are meant to toll deadlines that expired *during* 2020, not 2022, and none of the tolling cases involve claims that *still exist*. Plaintiff claims that NAR violates the PPPA *to this day*.

*Bozung*, 2023 WL 2385004 at *4 ("the half-decade time gap between NextMark's 2022 datacard and the alleged violation" makes plaintiff's allegations too speculative to infer a disclosure before July 31, 2016). Plaintiff argues that *Nashel* "improperly analyzed the plausibility of *the complaint's allegations*." Opp. 19 n.8. This is precisely what courts are supposed to do on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As in *Nashel* and *Bozung*, Plaintiff fails to plausibly allege that the information in the NextMark screenshot came from NAR. All that is left is the allegation that in 2016, NAR's website contained a "direct mail list" squarely covered by the PPPA's direct marketing exception. *See Coulter-Owens*, 695 F. App'x at 120 and *infra* at 7.

Plaintiff relies on five inapposite cases that do not address whether a complaint plausibly alleged the disclosure of plaintiffs' information during the relevant timeframe.[7] And in *Horton v. GameStop, Corp.*, the plaintiff alleged that the defendant's alleged disclosure of his data "caused" him to receive junk mail and calls. 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018). Here, the timing of the alleged "uptick in junk mail" is "far from plausible." *Bozung,* 2023 WL 2385004, at *4. Instead, as in *Bozung* and *Nashel*, Plaintiff relies on a third-party data card many

---

[7] *Moeller*, 235 F. Supp. at 874 (PPPA retroactivity and unjust enrichment claim); *Perlin*, 237 F. Supp. 3d at 639–43 (unjust enrichment); *Boelter*, 210 F. Supp. 3d at 587–90 (retroactivity, unjust enrichment, and constitutionality); *Boelter*, 192 F. Supp. 3d at 452–54 (PPPA's direct marketing exception); *Cain*, 981 F. Supp. 2d, at 684–87 (waiver, statute of limitations arguments, and statutory interpretation).

years removed from the alleged conduct, which is "too speculative to infer" that Defendant violated the PPPA. *Id.*; *see also Nashel*, 2022 WL 6775657, at *5.

**Direct Marketing Exception**: SAC Exhibit B shows NAR was engaged in direct marketing for the exclusive purpose of marketing goods and services, and this defense appears on the face of the SAC. *Cf. Coulter-Owens*, 695 F. App'x at 120. The cases Plaintiff relies on, *Ruppel v. Consumers Union of U.S., Inc.*, 2017 WL 3085365 (S.D.N.Y. June 12, 2017) and *Advance Magazine*, did not involve this scenario. Opp. 22–25.[8] Having incorporated pages of NAR's website related to direct marketing, Plaintiff cannot credibly claim that NAR's direct marketing opt-out page is not also incorporated. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (a court may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

For these reasons, the Court should dismiss the SAC for lack of standing, without further leave to amend, or for failure to state a claim, with prejudice.

Dated:  April 13, 2023

By:  */s/ Tiana Demas*
Tiana Demas
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
tdemas@cooley.com

---

[8] Plaintiff cannot selectively incorporate documents and exclude portions that contradict his claim. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 13, 2023, the foregoing Defendant National Association of Realtors' Reply Memorandum in Support of its Motion Dismiss the Second Amended Complaint was electronically filed with the Clerk of the Court by utilizing the CM/ECF System, which will provide electronic notification to all counsel of record.

*/s/ Tiana Demas*
Tiana Demas